OPINION OF THE COURT
Charles J. Thomas, J.
Must a foreign corporation doing business in New York respond to a judgment creditor’s information subpoena concerning assets belonging to a judgment debtor held outside New York? This question arises in a motion by the judgment creditors, Joseph Gavilanes and George Kavilznz, to punish the Bank of America National Trust and Savings Association (hereafter referred to as Bank of America) for contempt due to its failure to properly respond to an information subpoena.
The facts in this case are uncontroverted except as to whether or not the Bank of America does business in New York.
The background of this motion is as follows:
Judgment creditors are licensed real estate brokers who obtained a judgment against the defendants Siranoush Matavosian, Vartanoosh Mathevosian, and Angela Laid-law for $8,000, representing a brokers’ commission for the sale of defendants’ property. The buyer and seller failed to pay the real estate brokers’ commission at closing.
*869 In tracing defendants’ assets, plaintiffs obtained a copy of a check which had been deposited by defendant Laidlaw in “The Bank of America, Branch 12, San Francisco, Account #1239-621.” (This information had been stamped on the reverse side of the check.) Plaintiffs then served Bank of America with an information subpoena containing a restraining notice. The subpoena was served at the Bank of America’s New York office, located at 299 Park Avenue, New York, and contained the defendant Angela Laidlaw’s name, account number, and the number of the branch in San Francisco. The information subpoena also contained a questionnaire to be answered as part of the subpoena.
In response to the subpoena, Arthur Sellers, vice-president of the Bank of America, informed plaintiffs’ attorney by a letter dated September 1, 1982, that the Bank of America “does not do its banking business in New York State” and “that the Bank holds no funds or other property of Joseph Gavilanes nor is the Bank indebted to Siranoush Matavosian, Vartanoosh Mathevosian and Angela Laid-law in other manner in New York State.”
The initial issue to be dealt with is whether or not the Bank of America does business in New York. Upon oral argument on the motion, counsel for the respondent bank took the position that the office which was served with the subpoena was not a “branch” of the Bank of America; that it is an “office”, not a “branch” and that it does not maintain customer accounts or records of customer accounts. Counsel for the Bank of America conceded, however, that the New York office is licensed to do business in New York and that it does “certain types of loan work for corporations.” In fact, the letterhead of the bank clearly designates the address where the subpoena was served as the bank’s “New York Office.” The fact that the Bank of America chooses to call it an “office” rather than a “branch” is not dispositive of the issue. It is what the office does rather than what it is called that is determinative. Corporate loan work is no less banking business because it is performed at an “office” without tellers rather than at a “branch” with tellers. The court thus finds as a matter of law that the Bank of America does banking business in the State of New York.
*870 The initial threshold having been met, a brief examination of the information subpoena and applicable statutes is warranted. The subpoena, a Blumberg form, with a separate questionnaire attached, is authorized by CPLR article 52. An information subpoena is authorized by CPLR 5223 which provides that the “judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving * * * a subpoena” and that “failure to comply with the subpoena is punishable as a contempt of court.” CPLR 5224 (subd [a], par 3) provides that answers to an information subpoena “shall be made in writing under oath * * * by an officer [or] director * * * having the information * * * [and] * * * shall be returned * * * within seven days after receipt.”
It is well established that a New York court cannot attach property not within its jurisdiction; thus, had the bank responded that it held the described property not within New York State the matter would end there and the judgment creditor would be obliged to obtain the property in the situs jurisdiction. Nothing hereafter contradicts that well-established rule of law. The court is solely concerned in the within motion with the request for information which was part of the subpoena. The court finds that the bank must comply or be subject to contempt proceedings.
In support of its position that it has no obligation to respond, the Bank of America argues that a foreign bank which has a local branch is not subject to examinations in supplementary proceedings with respect to deposits in the foreign branch.
To support this position, the Bank of America relies upon Walsh v Bustos (46 NYS2d 240), which involved a demand to have the Bank of Mexico appear regarding a judgment debtor’s bank account. The Bank of Mexico is licensed to do business in New York but the judgment debtor’s assets were in its Mexican branch. The Walsh court held that “the jurisdiction of [the City Court of New York did] not extend to the deposits of the judgment debtor in the Mexican branch of this foreign bank” (supra, at p 241), and therefore “its New York agency cannot * * * be examined in supplementary proceedings” (p 241). In deciding the Walsh *871 case, Justice Parella relied upon previous cases involving examinations in aid of prejudgment attachment.
The development of the law with regards to such examination stems from the case of Stine v Greene (65 App Div 221). In Stine, plaintiff obtained an attachment in the action against the property of the defendant held by Greene Consolidated Copper Company, a foreign corporation created under the laws of West Virginia, whose principal place of business was in New York. Plaintiff demanded a certificate of the property held by the company as required by section 650 of the former Code of Civil Procedure, but was refused. Plaintiff then moved for an order requiring the Greene Construction Copper Co. to submit to an examination concerning the property of the defendant. On appeal, the Appellate Division, First Department, held that an examination in aid of attachment “must necessarily be limited to property within this jurisdiction subject to attachment, and cannot be extended to property situated elsewhere. The latter examination would be impertinent, as by no possibility could the lien of the attachment be extended to it.” (Supra, at p 223.)
Cases subsequent to Stine (supra) reiterated the position that when the balance on an account is maintained by an individual at a branch in a foreign jurisdiction, it is not subject to attachment in New York (McCloskey v Chase Manhattan Bank, 11 NY2d 936), and, therefore, the bank need not respond to questions with respect to the existence of such accounts. (Clinton Trust Co. v Compania Azucarera Cent. Mabay, 172 Misc 148.)
While the law with regard to prejudgment examinations in aid of attachment are procedurally similar to postjudgment examinations and restraining orders, there exists one critical distinction. That distinction is that when one is dealing with a posijudgment restraining notice the application of full faith and credit by a sister State to a New York judgment would provide a viable basis for execution of the New York judgment.
The Bank of America also argues that the debt owed by a branch finds its situs within the territorial jurisdiction of the individual branch and that service of an information subpoena can only be made at the branch where the debt is *872 owed. To support this the bank cites the case of Bluebird Undergarment Corp. v Gomez (139 Misc 742). In Bluebird the court held that “[a] branch bank is a separate and distinct * * * entity * * * Not only are [they] separate entities, but deposits made in a branch bank are payable there and there only”. (Supra, at p 744.)
The purpose for this rule is set forth in Cronan v Schilling (100 NYS2d 474, 476): “Unless each branch of a bank is treated as a separate entity for attachment purposes, no branch could safely pay a check drawn by its depositor without checking with all * * * branches and the main office to make sure that no warrant of attachment had been served upon any of them.”
The soundness of this New York rule was recently questioned by the United States District Court in the case of Digitrex, Inc. v Johnson (491 F Supp 66). The Digitrex case involved a motion for an order directing Manufacturers Hanover Trust Co. to release certain assets maintained by defendant which were frozen pursuant to a restraining notice. The defendant in Digitrex argued that the restraining notice was ineffective because it was not served on the particular branch which held the assets and that the restraining notice failed to specify the account to be frozen. The court in Digitrex found that the development of the use of computers throughout large commercial banks has centralized many of the bank’s administrative functions and permits “ ‘the orderly transaction of banking business’ ” (supra, at p 68) without having to serve restraining notices upon the depositors’ branch. The court found further that “the argument in favor of the rule set forth in 1950 in Cronan * * * no longer persuasive” (p 68).
The Digitrex court categorized the prior law as an “obsolete interpretation * * * which would * * * not only render creditors’ remedies less effective but interfere with the orderly business of the very banking institutions the interpretation was originally designed to protect” (supra, at p 69). The Appellate Division in Therm-X-Chemical & Oil Corp. v Extebank (84 AD2d 787) recently agreed with the findings of the Digitrex court. Therm-X-Chemical involved an action for damages against a bank for giving erroneous information in answer to an information subpoena which *873 had been served at one branch and forwarded voluntarily through the bank’s branches.
Failure to prove receipt of actual notice by the branch bank holding the funds was held to be fatal to the Therm-X-Chemical case (supra). The court found the restraining notice not effective when served on a branch but implied the result would be different if the bank had high-speed computers or central indexing capabilities.
The Bank of America argues that it does not maintain computer facilities between the branches and cities. This opinion does not have to consider that argument as this case does not require a computer. In the instant case plaintiffs have supplied all the information necessary to locate the account. No additional effort on the part of the bank is required. A letter or telephone call to the branch with the information supplied by plaintiffs and subsequently relayed to them would be compliance.
The dispute involves New York residents; the New York court had jurisdiction over the parties initially. The judgment was rendered in New York and New York has continuing jurisdiction to enforce its subpoenas in supplementary proceedings.
The court can find no legal nor practical reason why the bank should not respond. How onerous can it be to comply with the request, when the account number of the judgment debtor is provided on the subpoena?
Plaintiffs still have a long road to hoe to reach judgment debtor’s funds but the bank’s refusal to answer is not justified.
The bank’s claim that civil contempt is not warranted is not persuasive. The bank’s failure to timely respond was contemptuous of this court and has impaired, impeded and prejudiced the rights and remedies of the plaintiff.
Accordingly, based upon the above opinion plaintiffs’ motion to punish the Bank of America for contempt is granted. The bank is given leave to purge itself of the contempt within 30 days of this date by responding to plaintiffs’ subpoena in accordance with CPLR 5224 (subd [a], par 3).