**FILMTRUCKS, INC., Plaintiff,**

v.

**C. Gregory EARLS, Tri Dimensional Films, Inc., Equitable Production Funding of Canada, Inc. and Amsco Partnership, Ltd., Defendants.**

**No. 86 Civ. 2662 (RWS).**

United States District Court,
S.D. New York.

April 29, 1986.

Russ & Russ, Massapequa, N.Y., for plaintiff; Jay Edmond Russ, of counsel.

Dominick J. Dorata, New York City, for defendant C. Gregory Earls.

O'Donnell, Fox, Gartner & Sobolewski, P.C., New York City, for defendant Amsco Partnership, Ltd.; William G. O'Donnell, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Filmtrucks, Inc. ("Filmtrucks") brings this motion for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., and for attachment pursuant to Rule 64. Fed. R.Civ.P. to ensure the availability of funds to satisfy a money judgment against defendants C. Gregory Earls ("Earls"), Tri-Dimensional Films, Inc. ("Tri-Dimensional"), Equitable Production Funding of Canada, Inc. ("Equitable") and Amsco Partnership, Ltd. ("Amsco") and garnishees Precision Film Laboratories, Inc. ("Precision") and JAD Films International, Inc. ("JAD"). For reasons set forth fully below, Filmtrucks' motion for attachment of the property of Tri-Dimensional is granted, all other preliminary relief is denied, and the motion for expedited discovery is granted.

### Parties

Filmtrucks is a California corporation which rents equipment such as lighting fixtures, vehicles and generators for the on-location production of films and television commercials. Filmtrucks has business premises in New York and California.

Earls, a resident of Washington, D.C., who maintains a business premise in Washington, D.C., is an officer, director and

**1160**

shareholder of defendant Tri-Dimensional, and an officer, director and shareholder of defendant Equitable, and is also a 35% limited partner of defendant Amsco.

Tri-Dimensional, a corporation organized under the laws of the District of Columbia, maintains three business locations; New York, Washington, D.C. and California, and is engaged in the business of producing films, including the film "Savage Dawn" which is the subject of this action.

Equitable is a corporation formed under the laws of Canada, and maintains a business premise in Washington, D.C. Equitable is the corporate general partner of defendant Amsco, and its business is conducted by defendant Earls who is its president.

Amsco is a limited partnership formed under the laws of Virginia, of which defendant Equitable was, at the inception of the acts complained of herein, the general partner.

**Facts**

The dispute among the parties centers around the production of a movie entitled "Savage Dawn." On June 19, 1984, Earls and Dr. Miles Galin ("Galin") purchased all right, title and interest in the screenplay "Savage Dawn" from its author William P. Milling and assigned all right, title and interest in the screenplay to Tri-Dimensional, a production company formed on July 27, 1983 to produce the movie "Savage Dawn." On August 17, 1984, several individuals, including Galin and Earls, formed Amsco for "the business of acquiring board-wide ownership and the copyright of a screenplay entitled 'Savage Dawn.'" At the execution of the initial limited partnership agreement, Galin and Earls were each 50% limited partners of Amsco, and Equitable, run by Earls as president, was the corporate general partner. An amended certificate of limited partnership dated January 30, 1985, indicates that 15% of Earls' limited partnership was distributed to three new limited partners, reducing Earls personal stake as a limited partner to 35%.

According to Filmtrucks, Tri-Dimensional owned all rights in the screenplay and film "Savage Dawn," as evidenced by the security interest which Earls (on Tri-Dimensional's behalf) granted to the Screen Actors' Guild on August 13, 1984, which provided that Tri-Dimensional was and would continue to be the sole owner of the unimpaired title to the film free from prior liens, encumbrances or security interests. (Exhibit E, Order to Show Cause, April 2, 1986). This agreement was recorded in the United States Copyright office. In contrast, Amsco contends that Tri-Dimensional was the production company for the film but never owned any right or title to the movie or screenplay. According to Amsco, the limited partners and general partner raised over 1.2 million dollars to invest in production of the movie, and Tri-Dimensional submitted requests to Amsco for the payment of funds under a "routine" production company agreement with Tri-Dimensional, whereby Tri-Dimensional was to pay all creditors and deliver a completed film to Amsco free of all encumbrances. Both parties agree that the production company was severely undercapitalized and that the production costs far exceeded the 1.3 million dollar budget for the film.

From approximately August 11, 1984 through May 3, 1985, Tri-Dimensional rented various production equipment from Filmtrucks for creation of the film "Savage Dawn." When production on the movie was completed, $20–25,000 of Filmtrucks' equipment was missing from the film site, and Tri-Dimensional, joined by Filmtrucks, filed a claim with Tri-Dimensional's insurance company to recover the loss. The insurance company rejected the claim because of a lack of on-site security, leaving an outstanding debt to Filmtrucks of approximately $40,000.00.

A May 2, 1985 letter agreement from Amsco to Precision shows that on that date Amsco claimed ownership of the rights in "Savage Dawn" and directed Precision to insure that its inventory and records reflected that ownership. Amsco assumed all of the debts for laboratory services on the film performed by Precision up to that

date. According to Filmtrucks, this May 2, 1985 "transfer" of the rights to "Savage Dawn" was made without consideration and was an attempt to fraudulently convey property from Tri-Dimensional to Amsco to avoid the reach of creditors. According to Amsco, neither Earls nor Tri-Dimensional ever owned rights in the film, and there was no transfer, let alone a fraudulent one.

Documents and affidavits submitted by defendant Amsco indicate that Filmtrucks was not the only dissatisfied creditor of Tri-Dimensional and Earls. According to the affidavit of Amsco's counsel, Miles Galin became dissatisfied with Earls' management of the production company and on December 11, 1984 initiated a lawsuit against Earls and Equitable, among others, in the Southern District of New York which charged Earls with diverting funds from other properties into the production of "Savage Dawn." This action culminated in a settlement agreement which directed Galin to replace Equitable as the general partner of Amsco.

On March 13, 1986, Filmtrucks obtained a default judgment in New York State Supreme Court against Tri-Dimensional for the sum of $140,871.30, or the amount of the $40,000 unpaid balance on the equipment rental at the end of production, plus the accrued rental payments on such equipment until the commencement of the State Supreme Court action in late 1985.

On April 2, 1986 Filmtrucks brought an Order to Show Cause, returnable April 7, 1986, requesting an order attaching the assets of defendants and preliminarily enjoining all defendants from distributing or otherwise conveying the film "Savage Dawn." The April 2nd order also contained a provision for expedited discovery pursuant to Rules 30 and 34, Fed.R.Civ.P. As defendants failed to appear in court on April 7, 1986 and none of the contemplated documents were produced pursuant to the expedited discovery provisions, Filmtrucks

brought a second order to show cause, returnable on April 11, 1986, requesting an order directing garnishees Precision and JAD to deliver either $422,613.90 or the film negative to attorneys for Filmtrucks for deposit in an escrow account, and to submit to expedited discovery.

This second order provided for a temporary restraint pending the hearing and determination of the order to show cause, which restrained garnishees Precision and JAD and "all other persons and garnishees," from transferring any asset or property of defendants to the extent of $422,613.90. A hearing on both orders was held on April 11, 1986, where defendant Amsco appeared fully and defendant Earls appeared by counsel to contest the court's exercise of personal jurisdiction. At the hearing, counsel for Earls was granted leave to submit an affidavit or memorandum of law outlining Earls' basis for contesting jurisdiction, which affidavit was submitted on April 21, 1986. However, on April 17, 1986 counsel for Filmtrucks submitted a reply affidavit which outlines that personal service on Earls was made properly pursuant to Rule 4(d) and (e), and 5(b), Fed.R.Civ.P., and the New York CPLR section 308(2).[1]

## Discussion

### Attachment

Filmtrucks has adopted a comprehensive attachment strategy with its request for the attachment of all the assets of defendants Earls, Tri-Dimensional, Equitable and Amsco. Despite the fact that Filmtrucks alleges that this attachment request falls within several categories of the relevant New York Civil Practice Law and Rules (CPLR), we find that Filmtrucks has carried its burden only as to defendant Tri-Dimensional.

Attachment orders sought pursuant to Fed.R.Civ.P. 64 are governed by CPLR § 6212, which provides that Filmtrucks "shall show ... that there is a cause of

---

**1.** Both the affidavit of service attached to the April 2, 1986 Order to Show Cause and the supplementary affidavits of Earls and his wife Elizabeth D. Earls demonstrate that a copy of the original order was served upon Elizabeth Earls at the Earls' home in Washington, D.C. on April 3, 1986 in accordance with the direction of this court.

action and the one or more grounds for attachment provided in section 6201 that exist, and the amount demanded from the defendant above all counterclaims known to the plaintiff." CPLR § 6212. *ITC Entertainment Ltd. v. Nelson Film Partners*, 714 F.2d 217 (2d Cir.1983). Filmtrucks alleges that its request for attachment falls under sections 6201(1), (3) and (4) which provide as follows:

An Order of Attachment may be granted in any action ... where the plaintiff would be entitled, ... to a money judgment against one or more defendants, when:

(1) the defendant is a non-domiciliary residing without the state, or is a foreign corporation not qualified to do business within the state; or

(3) the defendant with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; or

(4) the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualifies the recognition under the provisions of Article 53.

While Section 6212 provides that plaintiffs seeking attachment orders must satisfy the requisites of one of the grounds listed in section 6201, the granting of attachments is discretionary with the district courts, and even when the statutory requisites are met, the order may be denied. *Trigo Hnos, Inc. v. Premium Wholesale Groceries, Inc.*, 424 F.Supp. 1125, 1133 (S.D.N.Y.1976).

■ Defendant Tri-Dimensional, a District of Columbia corporation, which is a foreign corporation under § 6201(1), has failed to appear or respond to two federal court orders, despite Filmtrucks' outstanding default judgment against Tri-Dimensional rendered in state court, CPLR

§ 6201(4). Filmtrucks' need to secure funds for satisfaction of this outstanding judgment is underscored by the apparently growing line of creditors, including the federal government, who seek to collect monies from Tri-Dimensional, which is by all accounts severely undercapitalized. *Katz Agency, Inc. v. Evening News Ass'n.*, 514 F.Supp. 423, 429 (S.D.N.Y.1981) (attachment for security purposes is appropriate when plaintiff will have difficulty enforcing a judgment); *see also Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F.Supp. 724, 726–27 (S.D.N.Y.1979) (attachment for security purposes should issue only upon a showing that drastic action is required).

While the existence of Filmtrucks' state court judgment obviates the need to consider whether Filmtrucks will prevail on the merits of its breach of contract and quantum meruit claims against Tri-Dimensional, *see* CPLR § 6212, Filmtrucks has not established that it will obtain the treble damages on the Racketeer Influenced and Corrupt Organizations Act claim (hereinafter "RICO"), 18 U.S.C. § 1961 *et seq.* Although Filmtrucks' claims that its RICO allegations in the complaint annexed to the show cause order and its memorandum of law satisfy the Second Circuit and Supreme Court's standards for RICO pleadings, a brief examination reveals that Filmtrucks has not met its pleading burden. As the Supreme Court stated in *Sedima S.P.R.L. v. Imrex Co. Inc.*, — U.S. —, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), "A violation of § 1962(c)," (the section upon which Filmtrucks presumably relies) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Section 1961(5) defines a "pattern of racketeering activity" to require at least two acts of "racketeering activity" defined in § 1961(1) to include the acts of mail fraud, 18 U.S.C. § 1341 and wire fraud, 18 U.S.C. § 1343, alleged here.

■ Filmtrucks has offered only a general reference to the defendants' allegedly fraudulent scheme to convey assets from Tri-Dimensional to Equitable, Earls and

Amsco in avoidance of creditors, and has not specifically alleged a single act of mail or wire fraud necessary to establish a violation of two or more predicate acts under section 1961. Furthermore, the Filmtrucks complaint (¶ 22–25) discusses repeated violations of the mail and wire fraud statutes "in furtherance of their fraudulent plan and scheme" but only can narrow the time frame involved to the two years prior to instituting this action. Similarly, Filmtrucks names Amsco, or in the alternative an association in fact of defendants, as the "enterprise" involved, but does not name the "violators" whose conduct the statute is designed to prohibit. The courts of this circuit have held that a generalized RICO pleading of this nature does not pass muster under the particularity requirements for fraud allegations under Rule 9(b), Fed. R.Civ.P., as the complaint must specify "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled plaintiff and (4) what the defendants 'obtained as a consequence of the fraud.'" *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) *quoting Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978). As this court has recently observed, a RICO claim which does not specify a single date, place or manner of communicating the mail or wire fraud alleged does not meet RICO pleading standards. *Terra Resources Inc. v. Burgin et al.*, slip op. at 8–9, No. 85 Civ. 2810 (April 1, 1986, S.D.N.Y.) [Available on WEST-LAW, DCTU database]. Attachment of the assets of Tri-Dimensional is therefore granted up to the amount of the state court judgment of $140,871.20.[2]

Filmtrucks has not demonstrated that attachment of the funds of Earls, Equitable and Amsco is warranted in these circumstances. The essence of Filmtrucks' attachment claim as to these defendants is that they have conspired with Tri-Dimensional to evade creditors by fraudulently conveying the assets of the company, namely the right and title to "Savage Dawn", to Amsco for little or no consideration. Filmtrucks contends that Tri-Dimensional was the owner of the right and title to "Savage Dawn," as evidenced by (1) the original purchase of the screenplay by Miles Galin and Earls in June, 1984 and the subsequent transfer of these rights to Tri-Dimensional; (2) the expressed purposes of incorporation in the Tri-Dimensional charter; (3) the recorded security interest granted to the Screen Actors' Guild by Tri-Dimensional in which Tri-Dimensional purports to be the owner of all rights to the film; and (4) the "information statement" executed by Earls for the Screen Actors' Guild in which Tri-Dimensional estimates the total budget for "Savage Dawn" to be $1,300,000.00.

The seven causes of action alleged in the complaint, violations of the New York Debtor Creditor Law, sections 270–278, fraud, breach of contract, inducing breach of contract, quantum meruit, constructive trust and RICO, stem from Filmtrucks' charge that the defendants had a preconceived fraudulent plan to undercapitalize Tri-Dimensional and to siphon assets from the company, leaving creditors with only a colorable claim to original ownership of the film rights and, as will be discussed *infra*, Filmtrucks has not succeeded in demonstrating that it is entitled to attach the assets of defendants Amsco, Equitable or Earls. *See Belgian Am. Mercantile v. DeGroeve-Marcotte & Fils*, 433 F.Supp. 1098, 1103 (S.D.N.Y.1977) (Attachment Order vacated on non-party's showing that defendant had no interest in debts attached but debts were owing to non-party because of assignment for valuable consideration prior to attachment.)

---

**2.** The power to attach assets of defendant Tri-Dimensional pursuant to this order extends only to Tri-Dimensional's property within New York State, *Gavilanes v. Matavosian*, 123 Misc.2d 868, 475 N.Y.S.2d 987, 989 (N.Y.Civ.Ct.1984), but does not include the right to attach or garnish the film "Savage Dawn" in the hands of Precision and JAD. Filmtrucks has conceded that Amsco is at least the current owner of the rights in the film, despite Tri-Dimensional's allegedly fraudulent conveyance of the rights. Furthermore, Amsco has submitted affidavits which present its

corporate shell to satisfy their contract claims.

■ While Amsco, Equitable and Earls are, respectively, foreign partnerships or corporations or non-domiciliaries within the scope of § 6201(1), Filmtrucks is pursuing an attachment of these assets for security other than jurisdictional purposes, and as this court has observed in *Reading & Bates Corp. v. National Iranian Oil Co., supra,* 478 F.Supp. at 726–27, "When the only purpose for a pre-judgment attachment is security, a different analysis should apply. When jurisdiction already exists, attachment should issue only upon a showing that drastic action is required for security purposes." Filmtrucks has not made such a showing under § 6201(1), as Amsco, current owner of the film whose attachment is sought, has appeared in the action and has submitted affidavits and relevant documents responding to Filmtrucks' claims, and the state court judgment was obtained only as against Tri-Dimensional.

Filmtrucks has failed to establish the applicability of Section 6201(3) to the case at hand. Under § 6201(3), Filmtrucks must demonstrate the alleged transfer of the film "Savage Dawn" was made with intent to defraud creditors and was not merely a routine disposition of corporate property. The statute requires that such actions be taken with intent to defraud, which cannot be lightly inferred but must be affirmatively proved. *Merrill Lynch Futures, Inc. v. Kelly,* 585 F.Supp. 1245, 1258 (S.D.N.Y. 1984), *citing Brastex Corp. v. Allen International, Inc.,* 702 F.2d 326, 331 (2d Cir. 1983).

Both the timing of the events at issue and the currently available evidence of dissent among the various defendants undermine the assertion that defendants engaged in concerted effort to frustrate this judgment creditor. First, Filmtrucks contends that the sole asset of Tri-Dimensional, the film, was transferred to Amsco "on or about May 2, 1985," almost one year before March 19, 1986 when Filmtrucks obtained its judgment against Tri-Dimensional. It is thus doubtful that any transfer of the film was made in anticipation of this creditor's lien, particularly in light of the fact that as of May 31, 1985, Tri-Dimensional and Filmtrucks had joined in submitting a claim to the insurer of the filming site for lost equipment. *Computer Strategies Inc. v. Commodore Business Machines, Inc.,* 105 A.D.2d 167, 483 N.Y.S.2d 716, 721 (1984) (removal or assignment or disposition of property is not grounds for attachment absent a showing of fraudulent intent). *See also Laco X-Ray Systems, Inc. v. Fingerhut,* 88 A.D.2d 425, 453 N.Y. S.2d 757 (1982).

With the present facts, Filmtrucks has not made a prima facie showing that Tri-Dimensional, Earls,[3] Equitable and Amsco acted in concert to defraud creditors. According to Amsco, and the affidavit of its accountant Gerald Y. Mordfin, Tri-Dimensional has no interest in the film and has never had such an interest, but merely functioned as the production company for Amsco, operating on a budget controlled by the partnership. Similarly, Amsco has produced evidence which shows a dramatic parting of the ways among Equitable, Earls and Amsco's limited partners over mismanagement of the assets which Amsco had contributed towards the production of the movie which culminated in removal of Equitable as general partner. Considering all of the evidence presently before the court, Filmtrucks has not demonstrated that the defendants conspired in the "secreting or disposal of ... particular assets of the [defendant] with intent to defraud [her] creditors." *Merrill Lynch Futures Inc. v. Kelley, supra,* 585 F.Supp. at 1258, *citing Eaton Factors Co. v. Double Eagle*

---

**3.** Filmtrucks has not detailed a single episode in which Earls acted in a capacity other than as corporate president of Tri-Dimensional, and therefore has not alleged a distinct basis upon which to charge Earls with a fraudulent transfer of these assets other than as a participant in the alleged conspiracy among all defendants to defraud creditors discussed herein. Any attachment of his personal bank accounts is also denied, as Filmtrucks has not offered evidence which would prompt the court to equate Earls with Tri-Dimensional as an "alter-ego."

*Corp.*, 17 A.D.2d 135, 232 N.Y.S.2d 901, 903 (1962).

### Injunctive Relief

Filmtrucks also moves to enjoin all defendants from "diverting, dissipating or transferring the film 'Savage Dawn' or any of the revenues from distribution or sale thereof," and to compel defendants to deposit up to $422,613.90 of the revenues from distribution of the film into an escrow account. In this court's view, however, Filmtrucks has failed to demonstrate that it will be irreparably injured if defendants are permitted to distribute "Savage Dawn."

In order to obtain a preliminary injunction in the Second Circuit, Filmtrucks must show (1) irreparable harm, and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Standard & Poor's Corp. Inc. v. Commodity Exchange Inc.*, 683 F.2d 704 (2d Cir.1982), *citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). "As a general rule, of course, a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages." *In Re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir.1985).

While defendant Tri-Dimensional owes a liquidated debt of $140,871.20 to its judgment creditor Filmtrucks, it is unclear how failure to enjoin the distribution or sale of the film would hinder Filmtruck's ability to collect upon an eventual judgment, as the film already has been transferred to defendant Amsco based on Amsco's prior claim to ownership and the partnership would receive payments for any distribution of the film which would be available to satisfy a judgment rendered. Unlike the evidence presented on the past conduct of defendant Tri-Dimensional, Filmtrucks has provided no evidence indicating that Amsco or its partners intend to avoid a judgment rendered against the partnership. Therefore, this is not a situation in which federal courts have found injunctive relief appropriate for an underlying claim of money damages, because it has not been "shown that the defendant 'intended to frustrate any judgment on the merits' by 'transferring its assets out of the jurisdiction' " (citations omitted), *In Re Feit & Drexler, Inc.*, *supra*, 760 F.2d at 416.

■ Any irreparable injury present in this situation would result from enjoining the distribution of a film whose concededly undercapitalized budget was approximately $1,300,000.00, in order to assure the availability of funds to satisfy a judgment creditor with a liquidated claim of $140,871.30, which might be trebled to result in maximum damages of approximately $422,-613.90. This is particularly true where judgment was rendered against only one of the four defendants herein, and there is evidence disputing Filmtrucks' assertion that Tri-Dimensional had ownership rights in the film superior to those of Amsco and its partners. While this court does not prejudge the merits of Filmtruck's fraudulent conveyance, constructive trust and RICO claims, it has not demonstrated that it will be irreparably injured if the extraordinary equitable relief requested is not granted. *See Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (A showing of irreparable injury is perhaps the single most important prerequisite for the issuance of a preliminary injunction).

To summarize, Filmtruck's motion for attachment of the available assets of Tri-Dimensional, not including the disputed rights in the film "Savage Dawn," is granted, and the motion for attachment is denied as to all other defendants. Similarly, preliminary injunctive relief is denied as to all defendants, and Filmtrucks' motion for expedited discovery is granted.

IT IS SO ORDERED.