OPINION OF THE COURT
Martin Evans, J.
The defendants, Bank Sepah-Iran and Bank Sepah-Iran (New York Agency) (hereinafter Bank Sepah), have brought on an order to show cause pursuant to the Foreign Sovereign *1027 Immunities Act (28 USC § 1602 et seq.) and CPLR 5240 to vacate restraining notices served by the plaintiffs, Seyed M. Raji and Marilyn C. Raji (hereinafter Raji), upon Bank Sepah, to vacate the subpoenas duces tecum served by Raji upon Bank Sepah, to enjoin Raji from further attachment of Bank Sepah’s assets pursuant to the judgments, and to enjoin Raji from executing upon the judgments. In the alternative the defendants seek pursuant to CPLR 5519 (c) and 5240 for a stay of the above-pending determination of the appeal of the judgments.
The judgments that are the subject of this motion were obtained after a jury trial in July 1986 in which the plaintiff sued for breach of contract and defamation and the Bank Sepah counterclaimed for conversion. The verdict for the plaintiffs Raji awarded them a total of $7,041,339.91.
The Foreign Sovereign Immunites Act of 1976 (28 USC § 1602 et seq.) (hereinafter FSIA) was enacted to provide immunity to foreign sovereigns unless specified exceptions within the Act apply.
Section 1609 of the FSIA, which reads: "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act * * * the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter”, clearly indicates that there are two exceptions to the immunity of a foreign State. (1) Waiver pursuant to prior existing international agreements or (2) the provisions of sections 1610 and 1611 of the FSIA.
At the time of the enactment of the FSIA, there was in existence a Treaty of Amity, Economic Relations, and Consular Rights between Iran and the United States which had been signed on August 15, 1955 and entered into force on June 16, 1957 (8 UST 899, TIAS No. 3835, 284 UNTS 93).
The court in Behring Intl. v Imperial Iranian Air Force (475 F Supp 383, 393 [D NJ 1979]) noted that "[T]he Immunities Act does not abrogate any existing international agreement to which the United States was a party prior to the Act’s enactment. Congress was obviously careful not to abrogate existing agreements by the passage of the Immunities Act. To the extent such international agreements set forth a waiver of immunity, those agreements are to be given effect. It is only if such agreements are silent as to immunity that the Act *1028 supplies the governing rule of law.” Thus, if there was a treaty in existence prior to the Act and such a treaty contains waiver provisions, they apply to the case before the court.
In September 1986 the United States Department of Justice prepared at the request of this court a suggestion of interest on behalf of the United States of America which stated "that the Treaty of Amity was in effect in March and April 1979, that it has not subsequently been abrogated or terminated, and that it remains in force today.” The Department of Justice further noted that the International Court of Justice confirmed the validity of the Treaty as did the Iran-United States Claims Tribunal in The Hague.
The Treaty of Amity, Economic Relations, and Consular Rights between the United States of America and Iran, August 15, 1955, article XI (4) provides "No enterprise of either High Contracting Party, including corporations, associations, and government agencies and instrumentalities, which is publicly owned or controlled shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other High Contracting Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.” (8 UST 899, 909.)
The defendants have claimed that they are wholly owned by the government of the Islamic Republic of Iran and thus are a government agency or instrumentality. Furthermore, by their activity they engaged in commercial and/or other business activities within the United States. The Treaty of Amity thus prevents the defendants from claiming immunity from execution of a judgment.
However, if one were to assume that the Treaty of Amity did not exist, then the provisions of sections 1610 and 1611 would be determinative as to whether immunity applies in this situation. A reading of these two sections indicates the following to be the relevant parts of the statute:
"§ 1610. Exceptions to the immunity from attachment or execution.
"(a) The property in the United States of a foreign state, as defined in section 1603 (a) of this chapter * * * used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by p court of the United States or a State after the effective date of this Act * * * if—
*1029 "(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver * * *
"(b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or a State after the effective date of this Act * * * if—
"(1) the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver”.
• "§ 1611. Certain types of property immune from execution * * *
"(b) Notwithstanding the provisions of section 1610 of this chapter * * * the property of a foreign state shall be immune from attachment and from execution, if—
"(1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver”.
The defendant is an agency and/or instrumentality of the Islamic Republic of Iran, which has been engaged in commercial activity within the United States. Section 1610 (a) (1) and (b) (1) both provide that there will be no waiver of immunity from attachment in aid of execution upon a judgment unless it is done explicitly or implicitly. As this court previously noted in its decision Raji v Bank Sepah-Iran (131 Misc 2d 158, 161 [Sup Ct 1985]) concerning the question of prejudgment attachment, "Bank Sepah is not immune from the jurisdiction of this court because it has failed to affirmatively assert entitlement to immunity as a foreign sovereign as a jurisdictional defense in its answer to the complaint * * * Such a failure is to be deemed a constructive waiver of sovereign immunity from jurisdiction.” The legislative history for the FSIA indicates that an implicit waiver of the statute would *1030 "include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.” (House Report No. 94-1487, 94th Cong 2d Sess [1976], reprinted in 1976 US Code Cong & Admin News, at 6617.) When a foreign sovereign agency or instrumentality consents to suit in the United States by not raising the defense in the responsive pleading as well as asserting claims against the plaintiff for adjudication by the court, then after a full trial on the merits, the foreign sovereign cannot invoke immunity with respect to the execution of a judgment when it discovers it has lost the case. To retain such immunity from execution, the agencies must expressly reserve their right to immunity. (Hercaire Intl. v Argentina, 642 F Supp 126 [SD Fla 1986], affd in part, revd in part on other grounds 821 F2d 559 [11th Cir 1987].) There has been no showing that Bank Sepah expressly retained that right in their answer or in any other papers before the court. Thus, there has been an implicit waiver of immunity from execution on a judgment.
Furthermore, while the Treaty of Amity, as discussed above, operates independently of the FSIA, the legislative history of the FSIA (1976 US Code Cong & Admin News, at 6617) notes that an explicit waiver may be made by the terms of a treaty.
Therefore, under the terms of the Treaty of Amity, the defendants have explicitly waived their immunity from attachment in aid of execution of the judgment, and under FSIA § 1610 (a) (1) and (b) (1), if the Act were applicable, Bank Sepah implicitly waived their immunity from execution of a judgment.
Bank Sepah argues that section 1611 provides them immunity from attachment and from execution because "Bank Sepah is part of a government-owned central banking systems [sic] although it maintains a legal existence separate from any other bank.” However, the defendants’ papers do state that Bank Markazi "is frequently referred to and acts in the nature of a central bank.” Plaintiffs’ exhibit J includes a number of listings from various worldwide banking directories and a review of these entries shows Bank Markazi to be the Central Bank of Iran. In fact one directory, The Bankers Almanac, states that Bank Markazi was "established May 28, 1960 as the Central Bank of Iran to take over the central banking activities from Bank Melli, Iran.” In the entry for Bank Sepah in Polks Bank Directory, the defendants are described as a commercial bank.
*1031 The statement that Bank Sepah is part of a government-owned banking system is not sufficient to establish that the defendants are the central bank. Furthermore, the various directory entries clearly show that Bank Markazi holds itself out as the Central Bank of Iran. Therefore, section 1611 of the FSIA is not applicable.
Since the defendants have waived their immunity explicitly by the terms of the Treaty as well as implicitly by operation of the FSIA provisions, the defendants’ motion to vacate restraining notices as well as to enjoin the plaintiffs from attachment of assets is denied. While the defendants argue in the alternative that if execution is permitted then the plaintiffs must comply with section 1610 (c) which states: "(c) No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608 (e) of this chapter”. However, since the Treaty of Amity predates the FSIA and in fact controls the question of immunity and since by the terms of the Treaty the defendants have waived immunity from execution of a judgment, section 1610 (c) does not apply and the court does not have to order attachments and executions as required by that section.
Bank Sepah has moved pursuant to CPLR 2304 and 5240 to quash the subpoenas duces tecum, dated September 4, 1987, served by plaintiff upon Bank Sepah alleging that they are burdensome and harassing and that they exceed what is reasonably necessary to determine the bank’s assets. Plaintiff maintains that the subpoenas are "to ascertain in general * * * the description, amount and location of the assets held by each branch or agency and whether any improper transfers have been made which would prejudice collection of plaintiffs’ judgments.”
CPLR 5223 in part states: "At any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any person a subpoena”.
Siegel’s Practice Commentary to CPLR 5223 (McKinneys Cons Laws of NY, Book 7B, CPLR C5223:2, at 214) discusses the terms "all relevant matter”. It reads:
"The judgment creditor is entitled to seek disclosure in *1032 respect of 'all matter relevant to the satisfaction of the judgment’. This is a generous standard and permits the creditor a broad range of inquiry through either the judgment debtor or any third person with light to shed on the debtor’s property, present or potential.
"Relevancy is the central theme. An attempt to delineate the inquiries that can be made or the materials that can be elicited would be futile.”
The court in Siemens & Halske v Gres (77 Misc 2d 745, affd 43 AD2d 1021 [1st Dept 1974]) held that public policy mandates that no obstacle be put in the path of a judgment creditor seeking to enforce the judgment of a court of competent jurisdiction.
Bank Sepah has cited a number of cases to support its motion (e.g., Stine v Greene, 65 App Div 221 [1st Dept 1901]; Bluebird Undergarment Corp. v Gomez, 139 Misc 742 [NY City Ct 1931]; Clinton Trust Co. v Compania Azucarera Cent. Ramona, 172 Misc 148 [Sup Ct 1939]). However, all these cases concern discovery to attach property prior to judgment. The decision, which the bank also cites, in Walsh v Bustos (46 NYS2d 240 [NY City Ct 1943]) relies upon these prejudgment attachment cases for its holding. The subpoenas that are before the court are only to discover the whereabouts of assets. In considering a subpoena requesting information on property located in a California branch of a bank, the court ruled in Gavilanes v Matavosian (123 Misc 2d 868 [NY City Civ Ct 1984]), while noting the holding in Walsh, ruled that the bank must respond to the subpoena. The court noted "It is well established that a New York court cannot attach property not within its jurisdiction; thus, had the bank responded that it held the described property not within New York State the matter would end there and the judgment creditor would be obliged to obtain the property in the situs jurisdiction. Nothing hereafter contradicts that well-established rule of law. The court is solely concerned in the within motion with the request for information which was part of the subpoena. The court finds that the bank must comply or be subject to contempt proceedings.”
Similarly, once Bank Sepah responds to the subpoena any attachment of funds outside the jurisdiction will be subject to the laws of the situs jurisdiction.
*1033 Therefore, Bank Sepah’s motion to quash the subpoenas duces tecum dated September 4, 1987 is denied.
With respect to Bank Sepah’s request that all matters be stayed pending the appeal the court orders that, since a bond has not been posted, execution on the judgments will not be stayed. Discovery pursuant to CPLR 5223 may proceed while the appeal is pending.