*752 OPINION OF THE COURT
Edward J. Greenfield, J.
Garnishee and nonparty witness Bank Leumi le- Israel B.M. (Bank Leumi) moves (by order to show cause) for an order pursuant to CPLR 2304 and 5240 (1) vacating and/or modifying a restraining notice served upon Bank Leumi, to the extent that it seeks to restrain the bank from transferring any assets of the defendant judgment debtor, Henry A. Roth (Roth), held by the bank outside the State of New York; (2) vacating and/or modifying a subpoena duces tecum served upon Bank Leumi to the extent that such subpoena seeks documents or information regarding assets of Roth held in Bank Leumi branches located outside the State of New York, and regarding an entity known as "Yasour”; (3) vacating and/ or modifying a notice to take depositions to the extent that the notice relates to Roth’s bank accounts located outside the State of New York.
Plaintiff, Intercontinental Credit Corp. (ICC), has obtained a judgment against Roth for a sum in excess of $19 million and seeks to collect against assets of Roth which may be held by Bank Leumi in Israel. Bank Leumi is an Israeli bank which claims to have no branches in New York, although it does have a licensed "agency” in New York. Bank Leumi has a subsidiary named Bank Leumi Trust Co. which is a duly licensed New York bank. Movant maintains that the New York agency does not have access to information or control regarding accounts of customers located in Israel. The bank claims that it has no centralized computer system under which the New York agency could locate the Israeli branches, if any, at which the judgment debtor maintains an account. Essentially, Bank Leumi maintains that under New York law, a New York-based branch cannot be served with process to enforce a judgment against the debtor’s assets located at a foreign branch of the bank, and that the bank would be subject to civil and criminal penalties under Israeli secrecy laws if it were to reveal the information sought by ICC.
It is true, as Bank Leumi maintains, that a New York court cannot attach property not within its jurisdiction (see, McCloskey v Chase Manhattan Bank, 11 NY2d 936; Gavilanes v Matavosian, 123 Misc 2d 868). However, the mere fact that enforcement of the instant judgment as against Roth’s assets held in Israel must be obtained through the Israeli courts, by means of comity, does not necessarily deprive the New York *753 courts of their ability to enforce a New York subpoena designed to reveal the whereabouts of assets located in foreign jurisdictions.
Under traditional rules, each bank branch was considered a separate entity and the New York courts declined to direct New York agencies of foreign banks to comply with subpoenas designed to uncover foreign assets. In Cronan v Schilling (100 NYS2d 474, affd 282 App Div 940 [1st Dept 1953]), the court vacated a subpoena duces tecum served on a New York agency of a Swiss bank to the extent that it sought information regarding assets located in Switzerland. The rationale was that since each branch was a "separate entity”, no bank branch could safely pay a check drawn by a depositor without checking with all other branches to ascertain whether an attachment had been served on any of them. In Newtown Jackson Co. v Animashaun (148 NYS2d 66 [Sup Ct, Nassau County 1955]), the court vacated an ex parte order calling for an examination in aid of attachment. The court indicated that the records sought were located elsewhere and that the New York agency of Barclay’s Bank had no knowledge of accounts located in a foreign jurisdiction.
Concepts of banking, however, have been changing in recent years. In Digitrex, Inc. v Johnson (491 F Supp 66 [SD NY 1980]), in an action to enforce a foreign judgment in New York, the judgment debtor moved for an order directing the garnishee bank to release assets which had been frozen pursuant to a restraining notice served on the bank’s main office. The court denied the motion, holding that the restraining notice was sufficient to restrain transfer of assets from an account located at one of the bank branches in the State. Although the court noted the traditional rules (citing Siegel, 1978 Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5222:5, 5201:13, and cases such as Cronan v Schilling, supra), the court stated that those rules no longer had vitality in light of the high-speed computers with central indexing capabilities to keep track of depositors’ accounts. The court cited the following quote from counsel for Manufacturer’s Hanover Trust (supra, at 68): " 'The employment of these computers, together with other sophisticated communications equipment, has enabled the Bank to monitor checking accounts from its main office. This, in turn, has permitted the centralization at the main office of many administrative functions, such as the imposition of a hold on a depositor’s account. Under these circumstances, service of a restraining *754 notice at the Bank’s main office promotes, rather than endangers, the orderly transaction of the banking business.’ ”
The Appellate Division in the case of Therm-X-Chemical & Oil Corp. v Extebank (84 AD2d 787) placed significant limitations on Digitrex. Therm-X was an action by a judgment creditor to recover against a local bank branch which had paid out funds to the judgment debtor despite a restraining notice served upon the bank at its main office by a judgment creditor. The court dismissed the action, holding that where the main office had no knowledge of accounts maintained at the branch offices and the bank lacked a central computer system, cases such as Cronan (supra) and McCloskey (supra) were still the law and the bank could not be held liable for transfer of funds out of the branch offices. However, Therm-X deals with a limited issue (liability for a mistake in failing to locate an account) and does not appear to preclude an examination by a judgment creditor designed to reveal the location of assets.
In Gavilanes v Matavosian (123 Misc 2d 868 [Civ Ct, Queens County 1984], supra), a New York court ordered Bank America to respond to a judgment creditor’s subpoena relating to the debtor’s assets located in a particular branch in San Francisco. Although Bank America denied that it had the type of central computer system described in Digitrex (supra), the court did not have to deal with the issue because the judgment creditor specified both the bank branch and the account number which the bank was to be required to search. Gavilanes (supra) distinguished the Cronan (supra) line of cases on the ground that these involved prejudgment attachment and stated that once a judgment had been obtained, the court had broad power under CPLR 5223 to compel disclosure of matters relevant to the satisfaction of the judgment. One postjudgment supplementary proceedings case, Walsh v Bustos (46 NYS2d 240), had struck down a demand to have the Bank of Mexico respond to a subpoena seeking information relating to Mexican accounts. The Gavilanes court, however, distinguished Walsh on the ground that the Walsh holding was based upon prejudgment attachment cases.
In Raji v Bank Sepah-Iran (139 Misc 2d 1026 [Sup Ct, NY County 1988]), the court upheld a subpoena designed to locate assets held by the judgment debtor in each branch of the bank. In that case, the bank itself was the judgment debtor rather than a nonparty garnishee. However, Raji can logically *755 be extended to cover disclosure by a bank of the foreign assets of an account holder.
On the basis of all the above cases, the court can order disclosure by Bank Leumi of Roth’s assets held in Israeli accounts, provided that there is a practical method by which the bank can obtain the records sought. Although Bank Leumi maintains that it does not have a computer link between New York and Israel and that there are more than 200 branches of the bank in Israel, it does not state that the main office in Israel lacks a centralized system of records. Thus, there is no logical reason why the New York agency cannot be required to contact the Israeli central branch to obtain the records relating to Roth’s accounts.
Before ICC can obtain disclosure of the Israeli records of Roth’s accounts, there is another hurdle which must be overcome. Bank Leumi maintains that under aspects of British common law which apply in Israel (from the days of the former British mandate status of "Palestine”) as well as section 2 (8) of Israel’s Privacy Law and section 496 of Israel’s Penal Law, bank accounts are secret information and that disclosure of such information gives rise to civil and criminal liability (see, affidavit of Yehuda Stein, chief legal advisor of Bank Leumi). Mr. Stein states, for example, that the common-law rule permits only limited exceptions to secrecy: where the bank is compelled by a court of competent jurisdiction to disclose the information; where there are specific Israeli statutes permitting disclosure; where the customer permits such disclosure, or where there is a danger to the State of Israel or a strong public policy involved. However, Mr. Stein does not cite clear Israeli authority stating that a compliance with a disclosure order of a foreign court would not constitute a valid defense to civil or criminal litigation arising out of disclosure of information concerning a customer’s bank account. Moreover, the cases and statutes presented do not clearly and unequivocally provide that bank accounts are covered by the secrecy rules.
When it became apparent that the government of Israel had a potential interest in the enforcement of its secrecy laws, this court, in May 1990, applied to the Israeli government for a statement of interest. Specifically, this court contacted the Government of Israel Trade Center in New York, the Israeli Economic Mission in New York and the Israeli Section of the United States State Department. Through these agencies, requests for opinions were forwarded to the appropriate gov *756 ernment offices in Israel, including the Supervisor of Banks for the Bank of Israel. Despite nearly five months of efforts by this court, the Israeli government never submitted any papers to the court. Thus, the court can only conclude that the government of Israel has no strong public policy against disclosure of Bank Leumi’s Israel customer records (regarding Roth) pursuant to an order of this court.
There are cases in which courts have refused to compel nonparty witnesses to produce documents or provide information from foreign jurisdictions regarding private litigants (see, Ings v Ferguson, 282 F2d 149 [2d Cir I960]), where the District Court declined to compel a bank to disclose Cuban documents, on the ground that compliance might subject the officers of the Cuban branch to criminal liability and the Circuit Court declined to compel a Canadian bank to disclose Canadian bank records which did not originate from New York. The bank was a witness rather than a party to the underlying dispute.
However, a court is not precluded from enforcing a subpoena duces tecum, requiring the production of foreign records, solely because the exercise of jurisdiction requires a person to engage in conduct subjecting him to liability under the laws of another State having jurisdiction of the matter (United States v First Natl. City Bank, 396 F2d 897 [2d Cir 1968]). The courts have since developed a balancing test to determine whether or not to compel disclosure prohibited by foreign law. In Compagnie Francaise D’Assurance Pour Le Commerce Exterieur v Phillips Petroleum Co. (105 FRD 16, 29-30 [SD NY 1984]), the court listed five factors: "(a) vital national interests of each of the states; (b) the extent and nature of the hardship that inconsistent enforcement actions would impose upon the person; (c) the extent to which the required conduct is to take place in the territory of the other state; (d) the nationality of the person; (e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state”. Disclosure is particularly appropriate where there is a strong United States public interest involved and the foreign government has not objected to the subpoena in question (Securities & Exch. Commn. v Banca Della Svizzera Italiana, 92 FRD 111 [SD NY 1981], which involved an investigation designed to uncover illegal securities trades). In the instant action, Israel does not appear to have a substantial interest in the enforcement of the secrecy laws, which are designed for *757 the protection of private parties. Otherwise, the Israeli government would have made an objection after having been given the opportunity to do so. On the other hand, the courts in the United States have an interest in insuring that judgments obtained here are collectible from the debtor’s assets, wherever they may be found. Moreover, the court is not convinced that Bank Leumi would be subject to inconsistent laws in Israel. There were no cases cited in which a party complying with the disclosure order of a United States or other foreign court was ever held liable in Israel for violation of the secrecy laws, even assuming that the secrecy laws would otherwise apply. In addition, the intrusion on Israel appears to be minimal, in that disclosure will be administered by an Israeli bank rather than by foreign parties performing an investigation within Israel.
Bank Leumi voluntarily conducts a licensed agency in New York. Where a judgment has been obtained against a party (Roth) who conducted business in New York, the New York agency must be prepared to comply with reasonable demands for account information regarding all its branches.
The disclosure sought herein is not unrelated to enforcement proceedings which ICC intends to conduct in Israel. Although the judgment cannot be enforced as such in Israel, while there is still an appeal pending in the United States, ICC has applied to an Israeli court for the appointment of an interim receiver to preserve Roth’s assets, or for injunctive relief in order to prevent Roth from transferring or dissipating his assets in Israel.
In light of the above, this court will issue an order directing Bank Leumi to disclose the information sought by the subpoena duces tecum and comply with the notice to take its deposition, insofar as these supplementary disclosure demands seek disclosure of Roth’s bank accounts located in Israel.
However, ICC’s demand for disclosure of bank records of an entity known as "Yasour” must be treated differently from Roth’s own account records. According to Mr. Stein, there is an Israeli entity known as Yasour Mortgage Bank Limited. ICC maintains that Roth has recently sold an interest in the company and now holds a mortgage or security interest in connection with the transaction. However, Yasour’s records may involve parties or entities having nothing to do with Roth. The subpoena must therefore be limited to information relevant to the matter under investigation (see, Matter of L & *758 S Hosp. & Institutional Supply Co. v Hynes, 51 AD2d 515; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250). Plaintiff thus must limit its examination to records of Yasour which reflect transactions between Roth and Yasour.
Finally, plaintiff has shown no legal basis for the enforcement of a restraining notice covering assets located outside the State of New York. The restraining notice served by plaintiff shall thus be limited to assets of Roth which are located in New York.
Accordingly, the motion is granted only to the extent that the restraining notice shall be limited in scope to assets of Roth which are located in New York and that insofar as the subpoena and examination sought relate to the entity known as Yasour, plaintiff’s inquiries shall be limited to transactions between Roth and Yasour.