MARLA OATES, Also Known as MARLA LYDAY, Appellant, *v.* GEORGE H. OATES, Defendant. BETTY R. BOWDOIN, Respondent.

First Department, December 16, 1969.

*Joel S. Stern* for appellant.

*Martin J. Hertz* of counsel (*Olshan, Grundman, Frome & Kretchmer,* attorneys), for respondent.

STEUER, J. This is a motion to vacate a subpoena in supplementary proceedings. The witness is the mother of the judgment debtor. The judgment was obtained for unpaid alimony and support of the debtor's children. When the debtor was found in contempt he fled the jurisdiction and his whereabouts are unknown to the judgment creditor and all efforts to locate him or to enforce the judgment or obtain support have been successfully frustrated. On this motion to vacate two points have been raised: the validity of the service and the right to examine.

As to the first, it appears almost without question that the process server made several unsuccessful attempts to serve the witness. The contention in the dissent to the contrary must have overlooked about the only fact stated in Mrs. Bowdoin's affidavit, namely, that she was constantly being harassed by the efforts to serve her. Based upon this, service was attempted to be made pursuant to CPLR 308 (subd. 3). The section allows service to be made by the following steps: 1. Mailing to the last known residence. 2. Delivery of the process to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the person to be served. 3. Filing proof of the same. This applies to the service of a subpoena addressed to a person found within the State (*Beach* v. *Lost Mountain Manor,* 53 Misc 2d 563, MACKEN, J.). Pursuant thereto the process server sought the witness at the Dorchester Hotel. At the hotel he was informed that Mrs. Bowdoin, the witness, was not there but that she had left a telephone number. He checked with the telephone company and was informed that Mrs. Bowdoin was listed at that number and the address was 178 East Street. On several visits to that address he was informed by Hughes that Mrs. Bowdoin was then in Europe. Finally upon November 14, 1968, Hughes told him that although Mrs. Bowdoin was then in the building he could not see her. He thereupon left the subpoena with him and mailed a copy to the

None of this is denied except by negative pregnants and the affidavit of an attorney not claiming to have knowledge of the facts. Mrs. Bowdoin submits an affidavit in which she makes no statement whatever as to her residence, her presence in the State, her telephone listing or her connection with the East 73rd Street building. Hughes' affidavit merely states he " conducts " a business known as Bowdoin Antiques in the building. He does not say that Mrs. Bowdoin has no connection with the business, nor does he deny that Mrs. Bowdoin was present in the building at the time of the alleged service. It was further shown that Mrs. Bowdoin's late husband was the prior owner of the building and no explanation is given of the peculiar circumstances of the continuation of the name and the telephone listing.

In the light of the prima facie showing, these failures to deny except by argument and attorney's conclusory statements—while the persons with knowledge maintain a discrete silence — indicate clearly that this ground for the motion is pure sham.

On the second ground, the proffered witness' affidavit is drawn almost in the words of section 782 of the superseded Civil Practice Act. The governing provisions of CPLR 5223 are more extensive. All that need be shown is " matter relevant to the satisfaction of the judgment." The judgment creditor asserts that the witness knows the present whereabouts of the debtor, which would certainly be relevant to obtaining satisfaction of the judgment. Also it is alleged that the witness has a joint bank account with the debtor. Although the details of this account are not given, the witness does not deny this execpt in the most conclusory terms.

The order entered January 22, 1969, vacating subpoena in supplementary proceedings should be reversed on the law and the facts and the motion denied without costs.

CAPOZZOLI, J. P. (concurring). There can be no doubt that CPLR 5223 provides for a far broader examination of a third party than did its predecessor section 782 of the Civil Practice Act. The latter was limited to an examination of such party concerning property, money or other means of the judgment debtor for satisfying the judgment. CPLR 5223 is not so limited and expressly permits an examination of a third party to the extent that he may be compelled to disclose " all matter relevant to the satisfaction of the judgment ".

An examination of the Third Preliminary Report of the Advisory Committee on Practice and Procedure discloses a number of comments relating to CPLR 5223 and 5224. At page 258 (N. Y. Legis. Doc., 1959, No. 17, p. 258) there is the following

comment: "The phrase 'all matters relevant to the satisfaction of the judgment' in Section 5223 is new and is designed to change the rule of those cases which have held that examination must be limited to material means for satisfying the judgment. * * * There is no reason for precluding the judgment creditor from discovering such matters as the judgment debtor's address, place of employment".

In Weinstein-Korn-Miller (vol. 6, par. 5223.05, p. 52–319) we find the following: "there is no reason to preclude the judgment creditor from discovering such matters as the judgment debtor's address", and on the next page there is the following: "A claim by the witness that he has no property belonging to the judgment debtor is not a valid reason for terminating the examination".

For the reasons above given I concur.

McGivern, J. (dissenting). First, in interpreting the record, I differ from the majority in the following respects:

(1) Nowhere does Mrs. Bowdoin state that "she was constantly being harassed by the efforts to serve her." She does say: "Mr. Joel Stern, the attorney for my son's former wife, has been continually harassing me, hoping to get at my son through me. He sends me letters and has the present husband of my son's former wife call me."

(2) According to the majority, it is accepted as a fact that "Mrs. Bowdoin was listed at that number and the address was 178 East 73rd Street." But, her attorney deposes and says, "It is completely untrue that Mrs. Bowdoin is listed in the phone book as residing at 178 East 73rd Street, New York City". And the occupant of that address, Nigel Hughes, says, "I reside at 178 East 73rd Street, New York City, and conduct a private antiques business at said address, under the name of Bowdoin Antiques, Inc. * * * That only I and one other employee reside on the above premises and Mrs. Bowdoin does not reside there".

(3) Further, the majority declare, "None of this is denied except by negative pregnants and the affidavit of an attorney not claiming to have knowledge of the facts". But, the attorney in his affidavit, December 9, 1968, avows: "*The following facts are true as of my own knowledge.*" (Emphasis supplied.)

(4) The majority assert, "It was further shown that Mrs. Bowdoin's late husband was the prior owner of the building." But, her attorney in the same affidavit (*supra*) swears "Nor was such building left to her."

(5) The majority opinion states, "The judgment creditor asserts that the witness knows the present whereabouts of the

debtor ''. But, the judgment creditor is Marla Oates, also known as Marla Lyday, and from her there is *no* affidavit in the record.

(6) The majority opinion declares, '' Also it is alleged that the witness has a joint bank account with the debtor.'' There is no support for this conclusion in the record. All we find is a statement by the attorney for the judgment creditor, '' Upon information and belief, at least in one instance she *was* co-owner of a Swiss bank account which the defendant used for the purpose of trading stock.'' And since there is not the slightest disclosure of the source of this information, the attorney's surmise is of no probative value.

Thus, I not only see no cause for censuring the respondent, Betty R. Bowdoin, I believe the court is bereft of any jurisdiction over her.

My gleanings of the papers lead me to the following conclusions: Mrs. Bowdoin, a widow, prior to the death of her husband, resided at Main St., Oyster Bay, Long Island, New York. Upon the death of her husband, she sold that home and moved to Northeast Harbor, Maine, where she established a residence. And she voted in Maine, in 1968. She is now a nonresident. The process server, Daniel Ritter, pursuant to a custom not unobserved in these parts, did not demonstrate he tried to serve her '' with due diligence '' in New York, although this must first be satisfactorily established before we can evaluate even his abortive efforts at complying with CPLR 308 (subd. 3). See *Jones* v. *King* (24 A D 2d 430 [1st Dept.]; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 308.14); even though the statute in my view, never applied to Mrs. Bowdoin in any event, in view of her apparent nonresidence at the time. I also adopt the analysis in the well-reasoned opinion of the distinguished jurist set forth in *Beach* v. *Lost Mountain Manor* (53 Misc 2d 563), and I would point out that the defendant's motion therein to quash the subpoena was granted. I further note that, in my view, the majority misconstrued the opinion in *Beach* if it be suggested that substituted service may be predicated upon a transient presence in this State not coupled with proof of residence or place of business here.

In any event, in the instant case, the process server said he '' attempted to serve Betty R. Bowdoin *at her last known residence, the Dorchester Hotel, 110 East 57th Street, New York City* ''. (Emphasis supplied.) Then, proceeding to 178 East 73rd Street, Manhattan, a completely different address, he flung the subpoena at the feet of a Mr. Hughes and departed, later mailing a copy to Mrs. Bowdoin at the latter address. This address, however, proves to be the address of a corporation,

to wit, Bowdoin Antiques, Inc., where Mr. Hughes swears he alone resides (with one other employee) and conducts a private antique business, specifically averring, as previously noted, " Mrs. Bowdoin does not reside there." Even the process server did not regard this as her " last known residence ", a fact that did not deter him from mailing a copy of the subpoena there. In my view, we should spurn such blatant noncompliance with the statute. " Where it appears prior to the attempted substituted service the defendant does not reside at the stated address, due process is not satisfied ". (*Polansky* v. *Paugh,* 23 A D 2d 643 [1st Dept.] 3 Carmody-Wait, 2d, New York Practice, pp. 699–700.) This defect in jurisdiction alone is sufficient basis for vacating the subpoena. And, on this submission, any attempt to hold her in contempt would be an unconstitutional deprivation of due process, which no court would countenance. At the very least, the majority should direct a hearing.

Concerning the views of the majority as to the scope of CPLR 5223, we deal here primarily with the question as to whether a subpoena requiring the attendance within this State of a non-domiciliary, not a party to an action, for the taking of a deposition, coupled with a subpoena duces tecum which also contains a restraining notice, was properly served. It is clear it was not. However, inasmuch as the majority has seen fit to predicate its determination upon that provision of CPLR 5223 which compels disclosure of " all matter relevant to the satisfaction of the judgment ", it is my view, that a caveat is in order — to wit, that this section was not intended to allow the harassment of or a fishing expedition against those who may have mere kinship, social relations or even past business relations with a debtor. Some initial showing of the need for and probable availability of requisite information should be demonstrated to sustain such a subpoena.

Mrs. Bowdoin avows she has no property belonging to her errant son, has no obligations to him, nor is she in possession of any of his books, papers or records. Since the creditor did not come forward with any acceptable proof to the contrary, I believe Special Term was again correct in finding a lack of factual showing and vacating the subpoena. And it may be observed that wholly aside from the grave constitutional question arising from invalid service of the subpoena no justification for further inquiry has here been demonstrated.

Accordingly, I would affirm *in toto,* or direct a hearing as to whether or not the court ever did properly acquire jurisdiction over the respondent. Until this is decided, all subsequent steps

are worthless, and any attempt to cite her for contempt would be impotent.

MARKEWICH and BASTOW, JJ., concur with STEUER, J.; CAPOZZOLI, J. P., concurs in opinion in which MARKEWICH, J., concurs; McGIVERN, J., dissents in opinion.

Order entered on January 22, 1969, reversed on the law and the facts, without costs or disbursements, and the motion granted without costs.

(Republished, December 18, 1969)

Order entered on January 22, 1969, reversed on the law and the facts, without costs or disbursements, and the motion denied without costs. Opinion by STEUER, J. MARKEWICH and BASTOW, JJ., concur; CAPOZZOLI, J. P., concurs in an opinion in which MARKEWICH, J., also concurs; McGIVERN, J., dissents in an opinion. The order of this court entered on December 16, 1969, is vacated.