DIGITREX, INC., Plaintiff,

v.

J. Howard JOHNSON et al., Defendants.

No. M–18–302.

United States District Court,
S. D. New York.

June 12, 1980.

Robert L. Kassel, New York City, for defendants; Philip R. Brookmeyer, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for Garnishee Manufacturers Hanover Trust Co.; Thomas M. Bistline, New York City, of counsel.

## MEMORANDUM AND ORDER

KNAPP, District Judge.

Before us is a motion for an order directing Manufacturers Hanover Trust Company ("Manufacturers Hanover") to release certain assets maintained by defendant J. Howard Johnson in an account at one of Manufacturers Hanover's branch offices, which assets were frozen pursuant to a restraining notice served on April 28, 1980, upon Manufacturers Hanover's main office. For reasons set forth in this opinion, the motion is denied.

On November 16, 1979, plaintiff Digitrex, Inc. obtained in U.S. District Court for the Southern District of Texas, Laredo Division, a judgment of $256,000 together with $20,000 as attorneys' fees against various parties including defendant Johnson. On March 26, 1980, plaintiff, alleging that the Texas judgment had not been paid, entered said judgment with this court, and on April 28 caused the above-mentioned restraining notice to be served upon Manufacturers Hanover's main office. The restraining notice stated that "it appears" that Manufacturers Hanover is "in possession or in custody of property in which the judgment debtor has an interest to wit: any bank account or accounts", and that pursuant to section 5222(b) of the New York Civil Practice Law and Rules, the effect of the restraining notice was to forbid Manufacturers Hanover "to make or suffer any sale, assignment or transfer of, or any interference with, any such property" except as provided in CPLR § 5222(b).

Defendant contends that the restraining notice was legally ineffective with regard to his account at the Manufacturers Hanover branch office for two reasons: (1) because "New York case law unequivocally states that a restraining notice must be served upon the particular branch at which the depositor's account is maintained"; and (2) because it failed to specifically identify the account to be frozen. We reject both contentions.

■ In arguing that in order to be effective, the restraining notice would have had to be served upon the Manufacturers Hanover branch office at which defendant's account was maintained rather than on Manufacturers Hanover's main office, defendant relies primarily on *National Shipping & Trading Corp. v. Weeks Stevedoring Company* (S.D.N.Y.1966) 252 F.Supp. 275. In that case, Judge Bonsal vacated a writ of foreign attachment of respondent's account on the ground that it had been served on the main office of the Marine Midland Grace Trust Company whereas the respondent had maintained an account only at a branch office of that bank. Judge Bonsal

found specifically that "[t]he New York rule, adopted for federal purposes, is that each branch of a bank 'is a separate and distinct business entity.'" *Id.* at 276, quoting *Bluebird Undergarment Corp. v. Gomez* (City Ct.N.Y.1931) 139 Misc. 742, 744, 249 N.Y.S. 319, 321. However, Judge Bonsal went on to explain the purpose for this rule by quoting *Cronan v. Shilling* (S.Ct.N.Y. 1950) 100 N.Y.S.2d 474, 476, *affirmed* (1st Dep't) 282 A.D. 940, 126 N.Y.S.2d 192:

> "Unless each branch of a bank is treated as a separate entity for attachment purposes, no branch could safely pay a check drawn by its depositor without checking with all other branches and the main office to make sure that no warrant of attachment had been served upon any of them."

We believe that this rule is no longer valid. Counsel for Manufacturers Hanover informs us:

> "Today, Manufacturers Hanover, along with most other large commercial banks in New York City, uses highspeed computers with central indexing capabilities to keep track of its depositors' checking accounts. The employment of these computers, together with other sophisticated communications equipment, has enabled the Bank to monitor checking accounts *from its main office.* This, in turn, has permitted the centralization at the main office of many administrative functions, such as the imposition of a hold on a depositor's account. Under these circumstances, service of a restraining notice at the Bank's main office promotes, rather than endangers, the orderly transaction of banking business." (Emphasis supplied)

We take judicial notice of the fact that the operations at most—if not all—New York City commercial banks, including Manufacturers Hanover, have become largely computerized as described by Manufacturers Hanover's counsel. Consequently it is clear that the argument in favor of the rule set forth in 1950 in *Cronan, supra,* is no longer persuasive.

We are mindful that a similar argument to the one now made by Manufacturers Hanover in this connection was made before and rejected by the Court of Appeals for this Circuit more than fifteen years ago in *Det Bergenske Dampskibsselskab v. Sabre Shipping Corporation* (2d Cir. 1965) 341 F.2d 50, 53:

> "Libelants . . . contend that technological improvements in communications and record-keeping have rendered the justification for the rule obsolete, while the proliferation of bank branches has increased the burden of the libelant of locating the proper branch office on which to serve the warrant of foreign attachment. These arguments, however, are properly addressed to the New York authorities. We may not alter an established rule of New York law when there has been no indication by the New York lawmakers that they have changed their point of view."

We are not aware, however, of a single case within the past fifteen years in which the rule in question has been reaffirmed by any New York appellate court.[1] To be sure, Professor David D. Siegel in the 1978 Practice Commentary to CPLR § 5222, C:5222:5 following CPLR § 5222 (McKinney 1978), has unambiguously restated the rule, there-

---

1. The rule was reiterated in *Buy Fabrics, Inc. v. Ada Company, Inc.* (S.Ct.N.Y.Cty.1973) 76 Misc.2d 607, 608, 351 N.Y.S.2d 522, 523: "Service on one *branch* should not be permitted to accomplish a restraint on accounts and funds in other branches because of the substantial interference with routine banking business. (*Cronan v. Shilling,* Sup., 100 N.Y.S.2d 474, aff'd 282 App.Div. 940, 126 N.Y.S.2d 192 . . . )." (Emphasis supplied) It is clear, however, that we are not bound to follow lower state courts on an issue of state law on which there is no definitive ruling by the state's highest court. *Commissioner v. Estate of Bosch* (1967) 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886. It being established to our satisfaction that—whatever may be the situation where service is made on a "branch"—service on the main office can cause no interference, "substantial" or otherwise, with routine banking business, we conclude that a New York court would not vacate the restraining order here at issue.

by implying its continued validity.[2] However, that Commentary is not buttressed by any recent case law. On the contrary, in the Commentary to CPLR § 5201 which defines the type of property subject to attachment, C:5201:13 following CPLR § 5201 (McKinney 1978), Professor Siegel cites only *National Shipping & Trading Corp.*, *supra*, for the proposition that a levy on a bank account must be effected at the branch at which the account is maintained.[3]

We do not believe that the New York courts would today perpetuate an obsolete interpretation of the attachment statute which would, according to the uncontroverted statement of one of New York's leading banks, not only render creditors' remedies less effective but interfere with the orderly business of the very banking institutions the interpretation was originally designed to protect. Believing that New York courts would today act in a sensible fashion, certainly the federal courts should not have to wait until some state court litigant brings a case to appellate attention before doing likewise. Consequently, we hold that service of the restraining notice in the case at bar on Manufacturers Hanover's main office was sufficient and legally effective.

■ We now turn to defendant's contention that the restraining notice was legally ineffective because it "fail[ed] to satisfy the 'specificity' clause of CPLR § 5222(b)." The statute in question contains no such "specificity" requirement. Section 5222(b) provides only in this connection:

"All property in which the judgment debtor is known or believed to have an interest then in and thereafter coming into the possession or custody of [a person other than a judgment debtor served with a restraining notice], *including any specified in the notice*, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor, shall be subject to the notice." (Emphasis supplied)

This means that a restraining notice *may* specifically identify the property to be attached, but certainly section 5222(b) cannot be read to require that a judgment debtor know the precise number of a bank account he wishes to have frozen. Nor do the two cases cited by defendant in this connection, *Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Company* (S.Ct. 1st Dep't N.Y.Cty.1965) 47 Misc.2d 741, 263 N.Y.S.2d 354, *affirmed* (1st Dep't) 25 A.D.2d 499, 267 N.Y.S.2d 477; *Walter v. Doe* (Civil Ct.N.Y.1978) 93 Misc.2d 286, 402 N.Y.S.2d 723, in any way support his position. Furthermore, we find that the desired object of the restraining notice was adequately described therein to allow Manufacturers Hanover to locate and "freeze" it. Consequently, we must reject as unfounded defendant's contention that the restraining notice was legally ineffective for failure to specifically identify the account to be frozen.

Defendant's motion is accordingly denied.

SO ORDERED.

---

2. "If the property pursued by the judgment creditor is a bank account maintained by the judgment debtor, the creditor must be sure to serve the restraint on the branch in which the account is kept. For enforcement purposes, a bank account is deemed property of the judgment debtor only at that branch regardless of how many other branches the bank may maintain."

3. "The levy on a bank account, incidentally, must be effected at the branch where the defendant maintains the account, notwithstanding the many branches the bank may have. *National Shipping & Trading Co. v. Weeks Stevedoring Co.*, 252 F.Supp. 275 (S.D.N.Y.1966). Even a levy at the home office of the bank will not be effective if the judgment debtor's particular account is maintained at an outlying branch."