OPINION OF THE COURT
Louise Gruner Gans, J.
An unrelated third party is not required to alter its computer system or to incur inordinate expense in order to comply with an information subpoena served by a judgment creditor pursuant to CPLR 5223 and 5224 (a) (3).
A judgment in favor of plaintiff/petitioner Garrick Realty for $1,738.60 was entered against defendant Flores on August 25, 1980. Respondent Paychex, Inc. (Paychex) and movant Automatic Data Processing, Inc. (ADP) are both national payroll processing companies. Neither of them was a party to the underlying action between Garrick Realty and Flores.
Unable to collect its judgment, on December 22, 1991, pursuant to CPLR 5223 and 5224 (a) (3), plaintiff served a postjudgment information subpoena on Paychex; on February 11, 1992, plaintiff served a postjudgment information subpoena on ADP. Both subpoenas inquired whether Paychex and ADP processed judgment debtor Flores’ wages, and if yes, requested the name of his employer and his last known address. The subpoena served on ADP also requested the name and address of his bank. Simultaneously with the service of these subpoenas, plaintiff’s counsel served an additional 472 information subpoenas on Paychex and an additional 482 on ADP. Each one related to a particular judgment and contained the same questions as the Flores subpoenas with respect to other judgment debtors.
Paychex did not respond to the information subpoena concerning Flores, or to any of the other subpoenas. Plaintiff/ petitioner Garrick Realty Corp. then moved for an order adjudging Paychex in contempt for wilfully failing to respond. Paychex opposed the motion and requested the court to vacate the information subpoena. ADP, for its part, moved pursuant to CPLR 5240 for a protective order denying the use of and vacating the information subpoena as to Flores.
With the approval of the court, ADP and plaintiff subsequently stipulated that ADP’s motion would be deemed to be a motion in all 483 actions in which ADP had received informa *870 tian subpoenas from plaintiff’s attorney and that the final determination of ADP’s motion would be binding on ADP and on the plaintiff in this action as well as the plaintiffs in the 482 other actions. Without entering into a written stipulation, plaintiff and Paychex have taken a similar position with respect to the additional 472 subpoenas which had been served on Paychex.
Both Paychex and ADP contend that requiring them to comply with the information subpoenas is unreasonable, burdensome and oppressive. Each represents that it does not know whether it has the information requested by the subpoenas, and does not have a centralized computer program in place which would enable it to find out. While the records of Paychex and ADP are fully computerized, these records are organized around the names of employers for whom payrolls are prepared. According to Paychex and ADP none of the identifying characteristics of debtors provided to them would permit retrieval of the requested information even if it is in their computer files, without the creation of new computer programs, or inordinately time consuming and costly searches of its decentralized records.
Garrick Realty and the other judgment creditors, on the other hand, claim both that Paychex and ADP exaggerate the difficulty, time and expenses required to comply with the information subpoenas, and that in light of their computer capacities, requiring compliance with the information subpoenas is not unreasonable, even if the creation of new computer programs is required.
CPLR 5223 and CPLR 5224 (a) (3) authorize the use of an information subpoena by a judgment creditor against "any person,” including third parties with no interest in the judgment or relation to the judgment debtor. (6 Weinstein-KornMiller, NY Civ Prac ¡[ 5223.03, at 348; ¡ 5223.10, at 360-361.) The only limitation is that the material sought must be "relevant” to the satisfaction of the judgment. (CPLR 5223; Oates v Oates, 33 AD2d 133 [1st Dept 1969].) The judgment debtor’s address, place of employment and bank accounts have all been held to be relevant to obtaining satisfaction of a judgment. (Oates v Oates, supra, at 135-136; Niagara Mohawk Power Corp. v Young, 135 AD2d 1139 [4th Dept 1987].)
Even though CPLR 5223 and 5224 give a judgment creditor "free rein” in obtaining disclosure from third persons who may be able to provide useful information, "disclosure must *871 not be used as a device for harassment.” (6 Weinstein-KornMiller, op. cit., 5223.10, at 360-361.) Under CPLR 5240, the court has broad power to deny, limit, condition, regulate, extend or modify the use of any CPLR article 52 enforcement procedure, including the postjudgment disclosure devices of CPLR 5223 and 5224. (Gorea v Pinsky, 50 AD2d 713 [4th Dept 1975]; James v Powell, 51 Misc 2d 705 [Sup Ct, NY County 1966]; Kaplan v Supak & Sons Mfg. Co., 46 Misc 2d 574 [Civ Ct, NY County 1965].)
The purpose of CPLR 5240 is to prevent "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts,” incident to enforcement of judgment procedures. (3d Report to Legislature, Advisory Commn on Practice & Procedure, quoted in Legislative Studies & Reports, McKinney’s Cons Laws of NY, Book 7B, CPLR 5240, at 454; Guardian Loan Co. v Early, 47 NY2d 515, 519 [1979]; see also, Commercial Credit Dev. Corp. v Bailey, 80 AD2d 748 [4th Dept 1981]; Cook v H.R.H. Constr. Corp., 32 AD2d 806 [2d Dept 1969].)
It is clear that compliance with even one of the 473 subpoenas served on Paychex and with one of the 482 subpoenas served on ADP would subject each to an unreasonable burden and expense. Paychex maintains 69 separate offices throughout the country and ADP has 38 geographically separate payroll processing centers, each with its own database of records. Specifically, Paychex has no centralized location for the records of all 69 offices. While ADP has the ability to access the records of its 38 payroll centers at its main office in Roseland, New Jersey, there is no centralized computer system, so that an operator in the main office would still have to "sign on” individually to the database of each of its 38 centers. The subpoenas served on Paychex and ADP are not limited to any particular locale and necessarily require a nationwide search.
Furthermore, neither Paychex nor ADP has a database or record system set up under the names or Social Security numbers of its clients’ employees. Rather, Paychex maintains the records at each of its offices in only the names of its clients, the employers. ADP’s payroll processing system is similarly designed around company codes that are assigned to its clients, the employers. Here, plaintiffs provide only employee names and in some instances Social Security numbers.
Paychex and ADP do not dispute that had they been pro *872 vided with the employers’ names, the information sought could easily be obtained. As it is, for Paychex to retrieve the requested information using its present computer and record-keeping system, a computer operator in each of its offices would have to call up each employer’s file and search for each judgment debtor by name, one by one. Paychex has 146,000 employer clients nationwide and for every subpoena the procedure would have to be repeated for each employer. Paychex estimates that the search for 473 employee names would require a total of 292,000 person hours at $18 an hour, for a total cost of $5,256,000 (473 names searched at 4 per minute = 120 minutes or 2 hours for each employer; 2 X 146,000 employers = 292,000 hours). For only one name the search would take more than 600 hours at the cost of $11,000.
For ADP to comply with the 483 information subpoenas using its existing computer and recordkeeping system, either a computer operator would sit at a terminal in its main office, or computer operators in each of its 38 payroll processing centers would sit at terminals and call up each employer’s file to search for the judgment debtor’s name. According to ADP, the operators would have to access every one of ADP’s 272,615 company codes and visually check one screen at a time for each employee name. ADP estimates that this procedure would consume 53,387 person hours at a cost of $629,967. ADP’s breakdown of the estimated cost was as follows: (1) 30 seconds to access each company code; (2) the average company code contains 47 employees; 15 seconds to flip each employee screen and check it against plaintiffs’ list of judgment debtors; 47 employees X 15 seconds = 705 seconds or 11.75 minutes per company code; (3) 272,615 company codes X 11.75 minutes = 3,203,226 minutes or 53,387 hours at $11.80 per hour (hourly rate per computer operator) = $629,967.
Plaintiff has not made a sufficient showing in rebuttal to the showing either of Paychex or of ADP. First, as to Paychex, plaintiff merely relies on the general assertion that "in this day of computerized record keeping and centralized administrative functions, any inconvenience caused by Article 52 enforcement devices has been reduced to a minimum * * * The burden on the respondent is merely having someone sit down at a computer terminal to inquire as to the information sought.” At the same time, plaintiff has informed the court that it is unwilling to bear the expense of the computer search it is asking Paychex and ADP to undertake.
In its reply papers, plaintiff neither addresses nor contro *873 verts any of Paychex’ assertions as to the time and expense involved in responding to the information subpoenas. Rather, plaintiff takes the position based upon the affidavit of its computer software expert, Karen B. Petkin, that with little or no expense or burden, Paychex could "convert” its computer system to a "centralized filing system, which would enable a single computer to search each of the client files simultaneously.” Even with a centralized system, however, Paychex would still be required to search each of its 146,000 client files for the individual employee names.
As to ADP, plaintiff submitted only an attorney’s affirmation which focused primarily on ADP’s ability and willingness to "develop the most cost effective and expeditious way of handling” the information subpoenas and on rebutting the expertise of ADP’s employee Elyse Medvetz, whose affidavit had been submitted by ADP. However, the court found Ms. Medvetz’ affidavit probative as to the issues at hand. Since 1986 Ms. Medvetz has held the position of legal assistant responsible for responding to all subpoenas and other requests for information served on ADP. Her affidavit is based on her personal experience of actually sitting at a computer terminal and performing information retrieval functions. Ms. Medvetz’ affidavit is further supported by that of ADP’s computer expert, Charles Lane, Jr.
Relying on the Lane affidavit, plaintiff argues mainly that ADP could easily develop a new computer program that would enable it to obtain the name and address of a judgment debtor’s employer at the cost of only $40 to $46. Plaintiff, however, ignores the essential fact that ADP does not have a centralized database. While Mr. Lane explained that he could write a "simple program” in a "couple of hours” that would take a single Social Security number and compare it with the 13 million Social Security numbers in its employers’ master files and that it would take 1.5 to 2 hours to run each Social Security number through the program, he also explained that this procedure would have to be repeated 38 times for each database in the 38 regional payroll processing centers. Based on Mr. Lane’s estimates, it would take 57 to 76 person hours (1.5 hours X 38 = 57 hours; 2 hours X 38 = 76 hours) at the cost of $1,089 to $1,345 (57 hours X $17.70 per hour = $1,089; 76 hours X $17.70 per hour = $1,345) to run the new program for just one Social Security number. The total cost for complying with all 482 subpoenas in this manner would range from $524,898 to $648,290.
*874 The court finds that the cost estimates provided by Paychex and ADP are somewhat exaggerated. Their figures do not reflect the statistical probability that in at least some instances a search of all files would not be required before the sought for information was discovered. However, it is clear, after taking the exaggeration into account, that compliance with the information subpoenas would subject Paychex and ADP to an inordinate expenditure of time and money.
As a matter of law, neither Paychex nor ADP can be compelled to create and install new software, or otherwise to alter their existing computer systems in order to answer the subpoenas. Nor should they be required to incur the enormous expense that would be involved. While no case has been found directly on point, a number of courts have considered the availability and use of computers in determining whether a third party must comply with an article 52 enforcement device. (See, e.g., Digitrex, Inc. v Johnson, 491 F Supp 66 [SD NY 1980]; Therm-X-Chem. & Oil Corp. v Extebank, 84 AD2d 787 [2d Dept 1981]; Matter of State Tax Commn. v Blanchard Mgt. Corp., 91 AD2d 501 [1st Dept 1982]; Gavilanes v Matavosian, 123 Misc 2d 868 [Civ Ct, Queens County 1984]; Intercontinental Credit Corp. v Roth, 152 Misc 2d 751 [Sup Ct, NY County 1990].) These decisions revolved around the question whether the traditional New York rule of Cronan v Schilling (100 NYS2d 474, 476, affd 282 App Div 490 [1st Dept 1953]), which requires restraining notices and information subpoenas to be served on banks at the particular branch where the account is maintained, should be modified, based on the nature of the bank’s computer system.
In Digitrex, Inc. v Johnson (supra), decided in 1980, the United States District Court for the Southern District of New York declined to vacate a series of CPLR 5222 (b) restraining notices served on the central office of the Manufacturers Hanover Trust Co. Taking judicial notice of the fact that Manufacturers Hanover, like most other commercial New York City banks, "uses highspeed computers with central indexing capabilities to keep track of its depositors’ checking accounts” (491 F Supp, at 68), and accepting Manufacturers’ representation that service of restraining notices on its main office was most efficient rather than burdensome, the District Court declared the rule of Cronan v Schilling (supra) obsolete and likely to be rejected by New York appellate courts.
Subsequent New York decisions, however, have failed to follow Digitrex (supra) merely on the basis of judicial notice of *875 computer innovations. Instead New York courts have determined the validity of the service of restraining notices and subpoenas on a case-by-case basis in relation to a bank’s existing computer operations and the burden imposed by compliance. Thus, Therm-X-Chem. & Oil Corp. v Extebank (84 AD2d 787 [2d Dept 1981], supra) held that if a bank has a centralized computer system, service on the main branch is sufficient; if it does not, the traditional rule requiring service on the appropriate branch office is applicable.
In Matter of State Tax Commn. v Blanchard (91 AD2d 501 [1st Dept 1982], supra), the service of notice of a tax collector’s levy on the main office of the Chemical Bank was held ineffective against assets kept in an account at one of Chemical’s branch offices, where the notice had failed to identify the name of the account sought to be levied upon. The bank was held not liable for paying out of the proceeds of the account to the tax delinquent pursuant to an earlier restraining notice served on the branch office. Distinguishing Digitrex (supra) on the facts, the court declined to "assume that the main office keeps easily accessible records of every attachment served at every branch office.” (91 AD2d, at 502.)
In Gavilanes v Matavosian (123 Misc 2d 868 [Civ Ct, Queens County 1984], supra), service of an information subpoena on the New York office of Bank of America concerning assets located at a particular branch in San Francisco was held effective where the subpoena identified both the branch and the account number which the bank was required to search. The court enforced the subpoena even though Bank of America lacked a national centralized computer system because use of such a computer was not necessary to secure the information. The judgment creditor had "supplied all the information necessary to locate the account,” and "[n]o additional effort on the part of the bank” was required. (123 Misc 2d, at 873.)
Finally, in Intercontinental Credit Corp. v Roth (152 Misc 2d 751 [Sup Ct, NY County 1990], supra), involving a $19 million New York judgment, compliance with an information subpoena served on the New York agency of the Israeli Bank Leumi was directed with respect to bank accounts in Israel. In the absence of information as to the bank’s recordkeeping system in Israel, compliance was ordered "provided there is a practical method by which the bank can obtain the records sought.” (Supra, at 755.)
These several decisions all rest on the assumption that the *876 obligation of a third party served with a CPLR 5223 information subpoena is to provide information which can with reasonable effort be ascertained by means of its presently existing information retrieval system. There is no authority to support plaintiff/petitioner’s position that Paychex and ADP must be compelled to design and implement a new computer system, or alter their existing systems, regardless of the time and expense involved. On the contrary, under existing authority the information subpoenas must be compatible with and tailored to the computer systems that Paychex and ADP already have in place. It is plaintiff’s burden to supply the information that is necessary to permit third-party respondents to locate the information it seeks. While the court cannot rule out that circumstances might be presented where a judgment creditor can show that with little effort and expense a computer system could be modified to provide the information sought, this is not the situation here. Finally, in the face of plaintiff/ petitioner’s declared unwillingness to bear the cost of retrieval of computerized information as in Ball v State of New York (101 Misc 2d 554 [Ct Cl 1979]), this is an option which the court has not pursued.
Accordingly, the motion of Garrick Realty to hold Paychex in contempt for failure to comply with the information subpoena is denied and the information subpoenas served by Garrick on Paychex and on ADP respectively are vacated.