[638 NYS2d 953]

S & S Machinery Corp., Appellant, v Manufacturers Hanover Trust Company et al., Respondents.

First Department, March 14, 1996

## APPEARANCES OF COUNSEL

*Alfred R. Fabricant* and *Lawrence C. Drucker* of counsel, New York City *(Fabricant & Yeskoo, P. C.,* attorneys), for appellant.

*Robert T. Stephenson* of counsel, New York City *(Andrew N. Keen* on the brief; *Chemical Bank Legal Department,* attorneys), for respondents.

## OPINION OF THE COURT

WILLIAMS, J.

The issue on this appeal is whether the defendant bank processed and responded to plaintiff judgment creditor's restraining notice and information subpoena in a reasonable manner, as a matter of law.

This action is the result of plaintiff's efforts to enforce a judgment obtained in July 1991 against Masinexportimport (Masin), a Romanian trading company, in the amount of $1,573,163.20 plus costs. In April 1992, plaintiff, unsuccessful in its collection efforts thus far, served restraining notices and information subpoenas on several New York banks which it had reason to believe might hold accounts for the judgment debtor. Plaintiff had discovered that Masin was an entity of the Romanian government and counsel reasoned that since the Republic of Romania had long maintained relationships with these banks, the company might also.

On April 23, 1992, both Chemical Bank and Manufacturers Hanover Trust Co. (MHT)* were served with a restraining notice and information subpoena requiring that they refrain from making or allowing any sale, assignment, transfer or interference with any of Masin's property then or thereafter coming into their possession, and to answer written questions as to whether they held any of Masin's assets. MHT was served at its main office located at 270 Park Avenue, Manhattan. The

* These banks have since merged.

process specified Masin as a Romanian corporation, but did not provide a United States address or any account numbers.

By letter dated May 14, 1992, MHT stated that "a search of records of said Trust Company failed to reveal any open or closed accounts" belonging to Masin. In fact, as plaintiff discovered subsequently, the corporate trust department of MHT, located at all relevant times at 450 West 33rd Street, Manhattan, was in possession of approximately $1.5 million worth of United States Government Treasury bonds which it was holding as escrow agent pursuant to an agreement between Masin and Summit Machine Tool Manufacturing Corp. (Summit). The escrow agreement had been entered in November 1990 as part of the settlement in an arbitration commenced by Masin against Summit which did not involve the plaintiff herein.

On May 16, 1992, Summit and Masin entered into an amended escrow agreement, at Masin's request, which provides that Summit and Masin would instruct MHT to deliver the bonds to Summit which would convert them into nonnegotiable drafts; that there would be 10 drafts, each with a face amount of $153,300; and that the original escrow agreement would be rescinded. On or about May 19, 1992, Masin sent a letter to MHT instructing that it transfer the bonds to Summit, that the escrow agreement was rescinded, and discharging MHT as escrow agent. MHT complied with these instructions and Summit, subsequently, deposited the drafts with an Oklahoma bank, beyond the reach of plaintiff's restraining notice.

At the time the postjudgment process was served, MHT had a centralized computer database which included "routine retail account and personal and commercial loan information", but not corporate trust accounts. This database was accessible from the main office. Affidavits submitted by bank officials failed to explain the exclusion of corporate trust accounts from the database and asserted that computerization of these records was not mandated by law or regulation. They also asserted that MHT received over 100,000 postjudgment enforcement devices in 1992 and that there was no record of the corporate trust department ever receiving the process at issue here.

Subsequently, plaintiff brought the instant action alleging that the defendant bank intentionally misrepresented the facts in its response to the postjudgment process, that it knew that it held the bonds, and that it consented to and participated in a scheme by Masin and Summit to deny plaintiff recourse to the bonds or at the least, made misrepresentations "negligently or recklessly and without regard for the actual facts".

The bank moved for summary judgment on the grounds that the restraining notice was not properly served on MHT, and that it did not properly lie against the escrowed bonds. In the alternative, the bank sought to reduce the *ad damnum* to reflect the alleged present value of the bonds and argued that punitive damages were inappropriate in this case.

Plaintiff answered the motion by alleging that the circumstances set forth in the complaint clearly showed that MHT, upon receiving the postjudgment process, warned Masin or Summit that plaintiff was trying to execute its judgment by recourse to the bonds and that the bank had this information in its exclusive possession, warranting an order denying summary judgment and allowing the case to proceed.

The motion court granted summary judgment solely on the ground that the restraining notice, having been served at the main office instead of the corporate trust office, had not been properly served. It also noted the absence of proof that the corporate trust department had actual knowledge of the restraining notice.

Summary judgment should not have been granted on this basis. Contrary to the motion court's ruling, service of the restraining notice and information subpoena upon MHT's main office was legally sufficient. The rule stated in *Digitrex, Inc. v Johnson* (491 F Supp 66 [SD NY]) should have been applied, and the limitation on that rule stated in *Therm-X-Chemical & Oil Corp. v Extebank* (84 AD2d 787) does not require a contrary result.

The *Digitrex* court argued persuasively that the old New York rule, requiring that the judgment creditor serve his postjudgment process on the particular branch of the bank where the judgment debtor's assets were located, was obsolete in an era when large commercial banks use centralized computer databases to handle their accounts. In light of this technological advance, it reasoned that service of postjudgment process on a bank's main office, rather than on the particular branch, should constitute legally sufficient service. The bank in question in *Digitrex* was MHT.

The subsequent *Therm-X* decision limited *Digitrex* by requiring that the old rule be followed "where the main office of a bank does not have high-speed computers with central indexing capabilities to keep track of its depositors' accounts" *(Therm-X-Chemical & Oil Corp. v Extebank, supra)*. MHT's argument here, that the restraining notice and information subpoena had to be served on its corporate trust department

since that database was not integrated into its centralized computer system, not only ignores the fact that MHT has a centralized computer database which, 16 years after *Digitrex*, is presumably more efficient and inclusive of the bank's records, but also ignores the policy rationale supporting *Digitrex*, i.e., elimination of the inefficiency to the bank and judgment creditors of scattershot service of postjudgment process on bank branches and departments in an effort to locate assets. Consequently, service of postjudgment process on MHT's main office was a reasonable way to proceed and should be no less binding here than it was in *Digitrex*.

■ Aside from the question of service, the inadequate state of the record here also precludes summary judgment. MHT as summary judgment movant bears the initial burden of making a prima facie showing of entitlement to judgment as a matter of law; only then does the burden shift to the opposing party to come forward with evidentiary proof establishing the existence of issues of fact. Failure on the part of the movant to carry his burden requires denial of the motion, the sufficiency of the opposing papers notwithstanding (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Tillmon v New York City Hous. Auth.*, 203 AD2d 19, 20; *Logan v Cardi*, 202 AD2d 355).

Here, MHT needed to establish, as a matter of law, that it met the applicable legal standard in its processing of and response to the restraining notice and subpoena. A review of relevant case law indicates that the applicable legal standard by which MHT's conduct should be measured is that originally set forth in *Therm-X* and refined in subsequent decisions: a case-by-case determination based on practicality and fairness, i.e., reasonableness, under the circumstances (*see, Zemo Leasing Corp. v Bank of N. Y.*, 158 Misc 2d 991, 993; *Carrick Realty Corp. v Flores*, 157 Misc 2d 868, 874-876; *Intercontinental Credit Corp. Div. v Roth*, 152 Misc 2d 751, 755, *vacated on other grounds* 154 Misc 2d 639).

In *Zemo*, for example, the issue was whether a bank should be liable for failure to timely impose a "hold" on a judgment debtor's accounts where it placed the hold by the close of business one day after receiving the restraining notice and information subpoena, yet the judgment debtor managed to withdraw money from the accounts in the interim. The court reasoned that where a bank acts "in a commercially reasonable fashion and in good faith" it should be afforded a reasonable period of time to process the restraint and subpoena and impose the "hold" on the account (*supra,* at 993).

Reasonableness, especially the reasonableness of a party's conduct, has been held to be a question of fact (see, e.g., *Argentina v Otsego Mut. Fire Ins. Co.*, 86 NY2d 748, 750; *Dershowitz & Eiger v Helmsley*, 219 AD2d 497; *Inter-Power of N. Y. v Niagara Mohawk Power Corp.*, 213 AD2d 110; *LaRose v Amazon Assocs.*, 139 AD2d 568; *Heimrich v Stevens*, 67 AD2d 1093).

On the record before us, MHT failed to establish as a matter of law that its search and response to plaintiff's restraining notice and information subpoena were reasonable, leaving a number of factual questions unanswered, *inter alia*: why it did not disclose to plaintiff the limited scope of its search in response to the restraining notice and subpoena; why information about corporate trust accounts was not included in its central database; what were its procedures at the time for processing the thousands of items of postjudgment process it allegedly received and particularly those involving its corporate trust clients; and did it in fact assure certain customers protection from postjudgment inquiry by routing such process only to the computer database while keeping their assets out of that database, or in some other manner. Hence, summary judgment was inappropriate for this reason as well.

In light of the views expressed above, it is unnecessary to address defendants' remaining contentions.

Accordingly, the order of Supreme Court, New York County (Ira Gammerman, J.), entered July 6, 1994, which granted a motion by defendants for summary judgment dismissing the complaint, is unanimously reversed, on the law, and the motion for summary judgment denied, with costs.

MURPHY, P. J., WALLACH, KUPFERMAN and ROSS, JJ., concur.

Order, Supreme Court, New York County, entered July 6, 1994, which granted a motion by defendants for summary judgment dismissing the complaint, reversed, on the law, with costs, and the motion for summary judgment denied.