**MOTOROLA CREDIT CORPORATION and Nokia Corporation, Plaintiffs,**

v.

**Kemal UZAN, et al., Defendants.**

No. 02 Civ. 666(JSR).

United States District Court, S.D. New York.

Oct. 26, 2003.

Steven Davidson, Gordon M. Clay, John O'Connor, Howard Stahl, Steptoe & Johnson, LLP, Washington, DC, Mishell B. Kneeland, Paul Fishman, Friedman Kaplan Seiler & Adelman, LLP, New York City, for Motorola, plaintiff.

Allison G. Kort, Jason Brown, Holland & Knight, LLP, New York City, for Nokia, plaintiff.

Robert F. Serio, Mark Holton, Prasanth R. Akkapeddi, Gibson, Dunn & Crutcher, New York City, David Rosenberg, Marcus, Rosenberg & Diamond, LLP, New York City, Stanley R. Mortenson, James R. Heavner, Jr., Baker Botts, LLP, Washington, DC, for Cem Uzan, Murat Hakan Uzan, defendants.

Kenneth M. Bailo, Emmet, Marvin & Martin, LLP, New York City, for Kemal Uzan, Cem Cengiz, Murat Hakabn Uzan, Melahut Uzan, Aysegul Akay, pro hac vice, defendants.

Brian V. Otero, Hunton & Williams, New York City, Jennifer Culotta, David F. Geneson, Hunton & Williams, Washington, DC, for Keith Bane, pro hac vice.

Andrew N. Vollmer, Andrew Weissman, Julie Riewe, Wilmer, Cutler & Pickering, Washington, DC, for ABN AMRO Bank, N.V.

William H. O'Brien, Kronish Lieb Weiber & Hellman LLP, New York City, for HSBC Holdings.

Richard Stark, Melissa Baily, Cravath, Swaine & Moore, LLP, New York City, for Credit Suisse.

Janis M. Meyer, Paul J. Bschorr, Dewey Ballantine, LLP, New York City, for Credit Lyonnais and UBSAG.

Nicole Johnson, Assist. Vice President and Council, New York City, for Chase Manhattan Bank.

Timothy P. Harkness, Davis Polk & Wardwell, New York City, for Delotte & Touche LLP.

## MEMORANDUM

RAKOFF, District Judge.

By Order dated October 19, 2003, the Court denied without prejudice the motion of plaintiff Motorola Credit Corporation ("Motorola") seeking to require JP Morgan Chase, ABN AMRO Bank, N.V., UBS AG, Credit Suisse, Credit Lyonnais, and certain subsidiaries of HSBC Holdings PLC[1] to transfer into this Court's registry the funds held in accounts outside this District belonging to the individual defendants and the companies they control. This Memorandum briefly states the reasons for that ruling.

The relief Motorola seeks is in aid of enforcing its $4.2 billion money judgment against the individual defendants. The application is therefore subject to Rule 69(a), Fed.R.Civ.P., which states:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment

debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

■■ The immediate difficulty in applying this Rule to Motorola's motion arises from the fact that, even though Motorola has served process on the principal New York (and United States) office of each of the respondent banks, the affected accounts are believed to be held in the banks' foreign branches. This implicates the doctrine of New York law known as the "separate entity rule," which in its pristine form provides that "each branch of a bank is treated as a separate entity ... in no way concerned with accounts maintained by depositors in other branches or at a home office." *Lok Prakashan Ltd. v. India Abroad Publications, Inc.,* 2002 WL 1585820, at *1 (S.D.N.Y.2002) (citations omitted); *Cronan v. Schilling,* 100 N.Y.S.2d 474, 476 (N.Y.Sup.1950). Under this doctrine, the "mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment." *National Union Fire Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc.,* 269 A.D.2d 101, 703 N.Y.S.2d 3 (1st Dept.2000).

■■ The putative purpose of this doctrine is to avoid undue interference with ordinary banking transactions. As stated in *Cronan,* 100 N.Y.S.2d at 474: "Unless each branch of a bank is treated as a separate entity for attachment purposes, no branch could safely pay a check drawn by its depositor without checking with all other branches and the main office to make sure that no warrant of attachment

---

**1.** Per the agreement entered into in open court between Motorola and HSBC Holdings PLC ("Holdings"), *see* transcript 10/09/03 at 4, Motorola substituted for its request for relief against Holdings a request for identical relief against "any subsidiary of Holdings that is incorporated and authorized to do business in or having an office in New York."

had been served upon any of them."[2] But in *Digitrex, Inc. v. Johnson,* 491 F.Supp. 66 (S.D.N.Y.1980), Judge Knapp of this Court opined that modern bank computerization had rendered this fear obsolete, thus casting doubt on the continued viability of the separate entity doctrine. *Id.* at 68–70. In the wake of *Digitrex,* the courts of New York began to re-examine the separate entity rule and loosen its strictures. *See, e.g., Therm–X–Chemical & Oil Corp. v. Extebank,* 84 A.D.2d 787, 444 N.Y.S.2d 26 (2d Dep't 1981); *Carrick Realty Corp. v. Flores,* 157 Misc.2d 868, 598 N.Y.S.2d 903, 907 (N.Y.City Civ.Ct.1993). It now appears clear, for example, that a restraining notice served on a bank's main New York office may in appropriate circumstances restrain accounts in all branches of that bank located in the issuing court's geographic jurisdiction. *See Limonium Maritime, S.A. v. Mizushima Marinera, S.A.,* 961 F.Supp. 600, 607 (S.D.N.Y.1997)(citing cases); *Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,* 921 F.Supp. 1113, 1119–20 (S.D.N.Y.1996).

▉ Nonetheless, counsel for Motorola have not cited a single case in which a New York court has so extended the separate entity rule as to permit restraint of accounts held in a bank's foreign branches pursuant to a restraining order served on the bank's office in New York, even when that office is the bank's principal United States, or worldwide, headquarters. Nor is this surprising, since the original rationale of avoiding undue disruption of routine banking practices may still carry weight when the requested transfers involve banks subject to foreign laws and practices. While, on the other hand, it may appear somewhat anomalous that banks that trumpet their account-holders'

ability to access their funds instantaneously anywhere in the world can still rely on the vestiges of the separate entity rule to shield such accounts from attachment by judgment creditors, it is not for this Court to limit the separate entity doctrine beyond the limits already set by the courts of New York. For as the Second Circuit long ago held in this context, a federal court "may not alter an established rule of New York law when there has been no indication by the New York lawmakers that they have changed their point of view." *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.,* 341 F.2d 50, 53 (2d Cir. 1965). Neither the New York courts nor the New York legislature has yet given any hint that New York law permits attachment of a foreign bank account by process served on that bank's New York office.

Rule 69(a) does, however, include two qualifications to its dependence on the vagaries of state law. The first, not applicable here, is where "any statute of the United States governs." The second, arguably applicable here, is "where the court directs otherwise." *See* Rule 69(a), *supra.* Although there appears to be no Second Circuit case construing this latter qualification, the First Circuit has ruled that it should be construed narrowly, lest it eviscerate the primary reliance on state law. *See Aetna Casualty & Surety Co. v. Markarian,* 114 F.3d 346 (1st Cir.1997); *Gabovitch v. Lundy,* 584 F.2d 559 (1st Cir. 1978). In particular, the "court directs otherwise" language should only be invoked in those "extraordinary circumstances," *Aetna Casualty,* 114 F.3d at 349 n. 4, where "established principles warrant equitable relief," *Gabovitch,* 584 F.2d at 561, enforceable by the court's contempt powers, *Aetna Casualty,* 114 F.3d at 349 n.

---

**2.** As this rationale suggests, the separate entity rule is far more than a mere rule of service of process, and therefore is not "trumped" (as Motorola argues) by Fed.R.Civ.P. 4.1(a).

4. In a footnote, the First Circuit has further cautioned that "the size of the award and the difficulties in enforcing the judgment due to the location of the assets and the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances which warrant departure from the general rule that money judgments are enforced by means of writs of execution rather than by resort to the contempt powers of the courts." *Id., citing Hilao v. Estate of Marcos,* 95 F.3d 848, 855 (9th Cir.1996).

Notwithstanding this dictum from another circuit, this Court cannot say on the papers here submitted that the present situation might not qualify for the invocation of the Court's equitable powers entitling Motorola to some or all of the relief here sought. But the issue is not ripe for adjudication, for Motorola has not yet even shown that it does not have an adequate remedy at law. For one thing, it has not yet sought an order directing the individual defendants themselves to transfer the bank account funds here in question to the Court's registry. Even assuming *arguendo* that, given the history of the individual defendants' contempts, such a request would be unnecessary (because futile), Motorola would next have to show, at a minimum, that its attempts to enforce its judgment against the relevant bank accounts in the countries in which the funds are actually located has proven nugatory. Here, for example, while Motorola has documented its past difficulties in securing relief with respect to the individual defendants' bank accounts in Switzerland, the respondent banks have now represented to this Court, *see, e.g.,* UBS AG's Second Supplemental Memorandum of Law, at 8, that Swiss law is far more favorable to attaching such accounts pursuant to a final judgment that is no longer subject to appeal (which, barring *en banc* review, is now the

case with respect to the judgment rendered against the individual defendants). It is also true that Motorola may not now know all of the banks' foreign branches that are involved; but under the last sentence of Rule 69(a), Motorola seemingly may seek in this Court to obtain such discovery from the respondent banks, and then proceed accordingly.

Thus, for the foregoing reasons, while the Court, by its order of October 19, 2003, denied Motorola's motion to require the respondent banks to transfer to this Court's registry those funds belonging to the individual defendants or the companies they control that are held in the banks' foreign branches, the motion was denied without prejudice to potentially being renewed upon a further showing in the aforementioned circumstances.